JUDGE LINDSAY
delivered the opinion oe the court.
By an act of the General Assembly, approved March 19, 1870, Alfred T. Pope and certain other gentlemen were appointed commissioners, and authorized to open books and to solicit and receive subscriptions to the capital stock of “ The Louisville, Harrod’s Creek & Westport Railway Company.” It is provided that the capital stock of the company shall be one hundred and fifty thousand dollars, with the privilege of increasing it to five hundred thousand dollars if the necessities of the company shall demand such increase. The stock is to be taken in shares of one hundred dollars each, and may be subscribed for “ by any individual, city, town, precinct, county, or corporation; and as soon as one thousand shares shall have been subscribed, the subscribers thereof, their successors and assigns, shall be and they are here declared to be incorporated into a company by the name of the Louisville, Harrod’s Creek & Westport Railway Company,” etc.
*249 By the 7th section of the act it is provided “that whenever the said railway company, or the .president or commissioner thereof, shall request the county court of any county to do so, such court may forthwith submit to the qualified voters of any designated precinct or precincts, or any portion thereof, in said county the question whether the court shall subscribe to the capital stock of said company, on behalf of said designated precinct or precincts, or any portion thereof, the amount of stock specified in the request of said company, either absolutely or on such conditions as may be proposed by said company.” The time and manner of holding the election, the return of the votes polled, and the manner in which the subscription of stock shall be made in ease the qualified voters determine in favor of making it, are folly set out, and the county court is empowered to issue bonds for the payment thereof, and directed “to cause to be levied and collected a tax sufficient to pay the semi-annual interest on the bonds issued and the cost of collecting such tax.”
Afterward this act was so amended as to add to the number of incorporators or commissioners several other persons.
On the 1st of July, 1870, four of these commissioners applied to the Jefferson County Court, and upon their motion the question was submitted to the qualified voters of Harrod’s Precinct, in that county, whether or not said court should subscribe to the capital stock of the company twelve hundred and fifty shares of stock, to be paid in the bonds of the precinct. At the election held pursuant to this order a majority of those voting pronounced in favor of the proposed subscription. It was accordingly made by the clerk of the county court in obedience to a subsequent order of said court; and at an election for directors, in which the county judge of Jefferson County voted the stock subscribed for Harrod’s Precinct, James Callahan, S. C. Metcalfe, John McFerran, Clarence Bate, and H. H. Buffenmeyer were declared elected.
*250 A short time thereafter said county judge issued the bonds of the precinct for an amount sufficient to pay this subscription, and delivered them to the directory of the company.
This suit was instituted by a considerable number of the tax-payers about to be affected by the subscription for stock to enjoin and restrain the company and its directors, or either of them, from selling or otherwise disposing of these bonds.
It is sufficiently pleaded, and the record clearly shows, that when the application was made to the county court and the election ordered, and when the stock was subscribed or attempted to be subscribed for, the company had not been organized, and had not the right by the terms of the act of incorporation to organize. One thousand shares of the capital stock had not been subscribed for, and by the second section of the act this was made a condition precedent to the formation, of a company by the subscribers for stock.
The application to the county court was not made by the company, nor by its president nor its commissioner. The company had no existence, and no person was authorized to apply to the court, nor to specify the amount of stock to be subscribed for, nor the conditions upon which the subscription should be made.
The act, in express terms, provides that the power of the county court to submit to the qualified voters of a designated precinct the question whether it shall subscribe to the capital stock of the company on behalf of such precinct shall arise whenever the “ company, or the president or the commissioner thereof,” shall request it to do so.
Having no right or authority to act in the matter upon its own motion, the county court could take no steps looking to a subscription of stock by precincts or portions of precincts until applied to for that purpose by the president or commissioner of an organized company.
It is true that individuals, cities, towns, precincts, counties, *251 and corporations are authorized to subscribe for shares of the capital stock of the company; but the seventh section of the act, in unmistakable language, prescribes when and at whose request and by what agency the question shall be submitted to the voters of “any precinct or precincts, or portions thereof.”
The mode by which and the time when subscriptions for stock may be made by towns, cities, and counties are not prescribed by the act; but specific limitations upon the power of those authorized to represent precincts and portions of precincts are carefully incorporated into it, and these limitations can not be disregarded.
It may be safely assumed that this special protection was given to the tax-payers of these quasi municipal subdivisions of territory for the reason that, unlike regularly organized political or municipal corporations, such as towns, cities, and counties, they have no officers directly responsible to them by whom they could be represented. • Such being the' case, it. was manifestly proper that the agency designated — the county court — should have no power to subject them to taxation, or even to call upon them to vote upon the question of taxation, until the construction of the proposed road should be assured by the organization of the company, and by the subscription for at least one hundred thousand dollars of its capital stock.
A careful consideration of the act leaves no doubt upon our minds that the legislature did not intend that precinct subscriptions should be included in the one thousand shares of stock necessary to be subscribed to authorize the company to organize and elect directors. If such had been the case, the commissioners appointed by the act would have been empowered to make application to the county courts to have the question of subscription by precincts or parts of precincts submitted to- the qualified voters thereof, instead of confining such authority to the company, its president, or commissioners.
*252 We therefore conclude that the county court in submitting the question of subscription to the voters of Harrod’s Precinct and in directing the subscription to be made, and the county judge in issuing the bonds and delivering them to the persons claiming to be directors of the company, acted without authority of law, and that, as matters stood when this suit was instituted, the tax-payers of such precinct were under no legal obligations to pay the bonds; and as they were about to be put upon the market and sold, possibly to persons ignorant of these facts, these appellants, whose property these bonds upon their face purported to bind, had the right to demand at the hands of the chancellor protection from future litigation and possible liability, and this protection could be effectually afforded them in no other- way than by granting the relief asked.
It becomes necessary now that we shall consider another and an exceedingly delicate question. Three months after the petition herein was filed, and after appellee had answered, the General Assembly passed “An act to amend an act entitled an act to incorporate the Louisville, Harrod’s Creek & West-port Railway Company,” providing, among other things, as follows:
“ Section 4. And be it further enacted, that the vote cast by the judge of the County Court of Jefferson County for the Harrod’s Creek Precinct of said county in an election for directors of said company, on the 1st day of September, 1871, at which election James Callahan, J. C. Metcalfe, Clarence Bate, John B. McPerran, and H. H. Buffenmeyer were elected directors, be and the same is hereby declared legal and valid.”
“ Section 5. That the action of three or more of the commissioners named in an act to which this is an amendment, or of those named in an act referring to the company, approved March 22, 1871, in petitioning the judge of the Jefferson County Court to call an election in Harrod’s Precinct, and *253 also in calling a meeting of the stockholders for the purpose of electing a directory, is hereby declared to be legal and valid.”
By the first section quoted the action of the county judge in voting the stock claimed to have been subscribed by Harrod’s Precinct is attempted to be legalized; and if these amendments have the effect of making the subscription of stock valid, then it results that the right guaranteed to the stockholders by the fourth section of the original act of incorporation, of voting their stock in the election of directors, is taken from Harrod’s Precinct and given to a person who, so far as this record shows, does not live in the precinct, nor own one dollar’s worth of taxable property within its territory.
The power of the legislature to authorize the taxation of local communities for the purpose of assisting in the construction of public improvements in which they may be directly and specially interested may be regarded as settled in this state, but we are not aware that the doctrine has been carried so far as to authorize the General Assembly to deprive the community subjected to taxation for such purpose of the right guaranteed to all other stockholders of being heard in the selection of the officers who are to manage and control its business. But we waive an investigation of this point, as the liability of the precinct to pay the bonds depends not upon the legality of the election of the directors, but upon that of the subscription for the stock. It is insisted, and not illogieally, that the fifth section of this act was intended to remedy all defects and to legalize the subscription. It declares that the action of the commissioners named in the original act, and the amendment of March 22, 1871, in petitioning the judge of the Jefferson County Court to call an election in Harrod’s Precinct, and in calling a meeting of the stockholders for the election of a board of directors, “shall be legal and valid.”
*254 As has already been determined, these commissioners acted without authority in asking for the election, and the county court had no power to order it upon their request. If this section can have the effect thus intended, it will make valid a contract which before the passage of the act was void.
As the case stood prior to the 20th of December, 1871, the company had in its possession certain bonds, executed and delivered by the county judge of Jefferson County, which it claimed were the bonds of Harrod’s Precinct, and for the payment of which these appellants could be lawfully taxed. Appellants insisted that these bonds had been issued and delivered without lawful authority upon the part of the county judge, and that they were not bound to contribute toward their payment.
"When the issue was thus made up in a court of competent jurisdiction the law was for the appellants, and the courts would have so adjudged; but before judgment the General Assembly intervened, and declared that certain acts, which were unauthorized and illegal at the time of their commission, should be deemed and held legal and valid. If this act be upheld, it must follow that in this state the legislature has power not only to make laws, but to determine what the law is, and that it can indirectly control the action of the courts by requiring a construction of existing laws different from that which they would have given if left untrammeled.
The judicial being a co-ordinate and independent department of the state government, can not consent that either one of the other departments shall interfere with it in the exercise of its exclusive right to determine the law of existing cases. As was said by this court in its opinion in the case of Gaines v. Gaines, &c. (9 B. Mon. 295), “it is to avoid the danger of individual rights being determined not by pre-existing laws, but by a law first promulgated in the decision itself, or made for it, or by the secret law of will or discretion, that the judi *255 cial department, intrusted with the power of ascertaining and enforcing private rights as created and sustained by law, is prohibited from exercising legislative power; and it is for the same reason that the legislative department, intrusted with the power of making, altering, and repealing laws, is prohibited from the exercise of the judicial power, which is but the power of applying the existing laws to the facts, and thence deducing and establishing the rights in contest. But it is in vain that the constitution has vested this power exclusively in the judiciary department, add said that it shall not be exercised by the legislature, if when a party, alleging injury by the deprivation of a right, has resorted by the appropriate remedy to the appropriate tribunal for redress, the party accused of wrong may by an appeal to the legislature obtain the passage of an act, not to change the general laws by which all similar cases are to be governed, nor to change the organization or jurisdiction of the courts by which others as well as himself may be affected, but an act for his own exclusive benefit, to operate only between himself and his antagonist, and by extinguishing the right asserted against him to stifle judicial inquiry, arrest the administration of the law in his case, and save him from those consequences to which the general laws would subject him if he has committed an injury to the rights of another.”
Adhering to the. doctrine thus clearly and distinctly announced, we can not hesitate to declare that the act of the 20th of December, 1871, did not and could not affect the right of appellants to have a judgment rendered in their favor upon the facts presented by the record and the law as it existed at the time their petition was filed.
This conclusion is not inconsistent with any right the legislature may have to impose local taxation for proper county or municipal purposes, without referring the question to the people to be affected thereby. The act of March 20, 1871, *256 does not propose to tax for any purpose. It assumes or determines that the people of Harrod’s Precinct were already subject to be taxed for the payment of the bonds in the hands of the railway company or its directory, because the application of the commissioners to the county court, the order of that court submitting the question of subscription to the votes of the precinct, the subscription of stock, and the execution and delivery of the bonds, were each and all of them “legal and valid” acts.
To this assumption or determination this court is unable'to give its assent; and impressed as it is with the conviction that the settlement of these questions is within the exclusive province of the judicial department of the state government, it is constrained to adjudge that the chancellor should have perpetually enjoined and restrained appellees from selling or in any way disposing .of the bonds delivered to them by the county judge of Jefferson County, and declared the same to be null and void.
His judgment is reversed, and the cause remanded for a judgment conformable to this opinion.