Norman, &c., v. Boaz, &c. Watson, &c., v. Same.

CASE 69—PETITION EQUITY—MAY 12.

# Norman, &c., v. Boaz, &c.

# Watson, &c., v. Same.

### APPEALS FROM FULTON CIRCUIT COURT.

1. INJUNCTION WILL LIE to restrain the collection of an illegal tax.
2. CONSTITUTIONAL LAW—TAXATION.—While a statute providing for the imposition of a tax may be unconstitutional as to colored persons, because they are not allowed to participate in the benefits derived from the expenditure of the money raised by the taxation provided for, that fact does not render the statute unconstitutional as to white persons,
3. SAME.—While it is not indispensable to the validity of a statute providing taxation for a local purpose that a majority or any number of those to be taxed therefor should, at an election, vote in favor of such taxation, yet, where the statute makes the right to tax to depend upon the sanction of the majority of the votes cast at an election to be held by officers appointed and qualified according to law, an election held by a self-appointed and irresponsible private person is of no validity whatever, and confers no authority to impose the tax.
4. CURATIVE STATUTE.—The Legislature has no right to intervene during the pendency of an action and declare that certain acts which were unauthorized and illegal at the time of their commission shall be deemed and held legal and valid, when the substantial rights of the parties, either plaintiffs or defendants, are thereby affected; and while this rule does not apply where the curative statute relates only to irregularities or informalities, it does apply in this case, the proceedings attempted to be cured being absolutely void.

ROBERTSON, SMITH & ROBBINS FOR APPELLANTS.

1. Where the Legislature grants to another tribunal the power to tax, it can only be exercised in *strict* conformity to the terms in which the power is granted. (Campbell Co. Ct. v. Taylor, 8 Bush, 208 ; Bowling Green and Madisonville R. R. Co. v. Warren County Court, 10 Bush, 721.)

   In this case there was no authority to impose the tax, as the vote was not taken as required by the act providing for the imposition of the tax.
2. The act providing for the tax was unconstitutional, because under it colored persons in the district who owned property were not per-

mitted to vote; and it is no answer to this objection that no tax is claimed against them, or that they are not complaining.

3. Injunction will lie to restrain the collection of an illegal tax. (Gates v. Barrett, 79 Ky., 296.)

4. The curative statute passed after the institution of this action can not affect appellant's rights.

5. Cited upon the whole case: (Bullock v. Curry, &c., 2 Met., 171; Mussulman v. Marquis, 12 B. M., 615; Dudley v. Trustees of Frankfort, 5 Bush, 247; Lou. & Nash. R. R. Co. v. Warren County Court, 9 Bush, 250; Allison v. L., H. C. & W. R., 79 Ky., 296.)

C. L. RANDLE FOR APPELLEES.

1. Both the original act authorizing the tax, and the amendment thereto, are constitutional. (Cooley's Constitutional Limitations, 163; 2 B. M., 178; 10 Bush, 604; 7 Ky. Law Rep., 407.)

2. Appellants, white persons, will not be allowed to question the constitutionality of these acts upon the ground that they discriminate against negroes. (Cooley's Constitutional Limitations, 163; 10 Bush, 681; 13 Bush, 218; 79 Ky., 22; 7 Ky. Law Rep., 407.)

3. The irregularities complained of were not such as to render the election void. (Cooley's Const. Limit., 778, 779, and note 1 to section 618, 4th ed.; 80 Ky., 160; 7 Bush, 523.)

4. The burden is on appellants to show want of, or excessive, assessment. (High on Injunctions, 490; 80 Ky., 160.)

5. Excessive assessment is not ground for injunction. (High on Injunctions, secs. 485, 484, note 4, p. 322, 2d ed.; Cooley on Taxation, 540.)

6. Mere illegality is not ground for injunction. (High on Injunctions, 2d ed., secs. 485, 544, 545, 511; 80 Ky., 160; 11 Bush, 439.)

7. Personal tax can not be enjoined. (Cooley on Taxation, 538; High on Injunction, 505.)

8. Appellants are not entitled to injunction to prevent multiplicity of suits. (Cooley on Taxation, 546, 547.)

9. As the acts under which the tax is sought to be imposed give no means of collecting the tax, it must be collected by ordinary action; and the remedy of appellants is, therefore, plain and complete at law. (Cooley on Taxation, 13.)

JUDGE LEWIS DELIVERED THE OPINION OF THE COURT.

By an act of the General Assembly, entitled "An act to incorporate 'Carr Institute, in Fulton county,'" approved March 9, 1882, and an amendatory act approved March 17, 1884, the college therein mentioned was declared a common school, and as such entitled to draw

from the common school fund of the State each year all the money due the school district in which it is situated.   And for the purpose of erecting a suitable building, it was provided that the question of a sub-scription of five thousand dollars by the district, to be paid for by taxation, should be submitted to the qual-ified white voters of the district on the first Saturday in May, 1884, and in the event of the votes then cast being in favor of such subscription, the trustees of the college were to be authorized to annually, by some suitable person appointed by them, make an assessment of the taxable property in such district, and to levy a tax not to exceed thirty cents on the one hundred dollars of property subject to taxation, and a poll-tax of not ex-ceeding two dollars on each white tithe, for the purpose of enabling them to pay one-fifth of the subscripton and accrued interest, the collector of the tax to be ap-pointed by the trustees.

Under these acts an attempt was made at the time indicated to hold an election upon the question of the subscription mentioned, and also of nine trustees of the district, as required thereby, when it is claimed the proposition for the subscription was carried by a major-ity of the votes cast, and the candidates were duly elected trustees.

Afterwards, appellees, assuming authority to act as such trustees, caused an assessment of the taxable prop-erty of the district to be made by a person appointed by them for that purpose, made a levy of one thousand five hundred dollars tax on the district for the year 1885, and appointed appellee Boaz to collect the taxes so laid.

These two actions, consolidated and tried together, were instituted in July, 1885, by residents and tax-payers of the district, for the purpose of obtaining an injunction to. perpetually restrain appellees, claiming to be trustees, from further proceeding to levy, and Boaz from collecting said tax, and from distraining and selling their property therefor. And the lower court having dissolved the temporary injunctions and dismissed both the actions, the plaintiffs prosecute this appeal.

Before considering the grounds upon which the plaint-·iffs seek relief we will notice the position assumed by counsel for appellee, that an injunction will not lie in ,cases of this sort.

Whatever may be the rule in other States, as said in Gates v. Barrett, 79 Ky., 295: "The right to have an injunction to restrain the collection of an illegal tax has been so long recognized and acted upon in this State that it is unnecessary to stop to inquire upon what ground that jurisdiction is exercised by courts of equity."

However, these are not cases in which it is sought to restrain the collection of taxes alleged to be illegal, merely by reason of irregularity or misuse of authority by officers duly elected and qualified to act. But the remedy is against persons who it is stated are attempting to cause an assessment of property, lay taxes and cause the collection thereof, without being officers with any authority whatever.

The first ground upon which plaintiffs ask relief is, that the two acts are unconstitutional, because the property of colored persons residing in the district is made

subject to the tax, while they are neither allowed to vote upon the question of the subscription nor to participate in the benefits derived from the expenditure of the money raised by the taxation provided for.

As the plaintiffs are white persons, and consequently not at all affected by the alleged discrimination against colored persons of the district, the court, according to a well-settled and conservative rule, will not listen to the objection made by them to the constitutionality of the two acts on that account.

But we do not think, according to a proper and reasonable construction of the acts, the property in the district of colored persons is made subject to taxation to pay the subscription authorized thereby. And as only the property of white persons can be made subject, the acts, according to the decision of this court in Marshall v. Donovan, 10 Bush, 681, cannot be regarded as in violation of the Constitution of the United States.

In that case the same objection was made to the statute as is made here, and this court, after a full consideration and discussion of the question, held that while if colored persons were taxed for school purposes, and the money expended for the exclusive benefit of the whites, the taxation would be unconstitutional as to, and might be resisted by, the former, that fact would not render the act unconstitutional as to the latter.

By the act of March 17, 1884, the same clerk who was appointed to record the votes at the municipal election of police judge, marshal and trustees of the town of Fulton, was required at the same time and place, and in the same poll-book, to record the votes given

upon the proposition for the subscription to erect the
college building, and for the nine trustees of the school
district authorized to be then elected. And he was
required in making out such poll-book to prepare two
columns for the purpose of recording the votes given
for and against the proposition for the subscription,
and to propound to each person offering to vote the
distinct question how he desired to vote upon that
proposition.

But it is alleged by the plaintiffs in each of these
cases, and proved, that the clerk of the municipal elec-
tion did not prepare the poll book as required by the
act of 1884 for recording the votes upon the proposi
tion to make the subscription, and for the nine trustees
of the school district, nor did he in any book record
the votes given for either purpose. On the contrary,
the only record of such votes was made by a private
person on his own motion, and in a book prepared by
himself. And though he was in the same room when
the election of municipal officers was being held, it is
conclusively shown that neither the clerk or judges of
that election did or could supervise or give attention
to his proceedings. But he, without being appointed,
or authorized by law to be appointed, for the purpose,
without being qualified or authorized by law to be qual-
ified, and without the presence of judges to pass upon
the qualifications of voters, not only recorded the votes
attempted to be given, but assumed authority to de-
cide who were entitled to vote.

It seems to us that an election attempted to be thus
held can not be valid for any purpose, nor can the book
in which the votes purport to have been recorded by

such unauthorized person be taken as evidence that either a majority of votes or any votes were cast in favor of the subscription, or that the persons claiming the power to act as trustees of the school district ever were so elected. For the conditions upon which the subscription was authorized by law have not, in any respect, been complied with, nor have the persons assuming the right to act as trustees in virtue of that pretended election been thereby invested with any official authority whatever.

As, therefore, when these two actions were instituted, the school district was not liable to taxation for the erection of the college building, and appellees had no power as trustees to levy a tax for such purpose, or to authorize appellee Boaz to collect it, it would seem that appellants were entitled to the relief sought by them.

But January 12, 1886, while the actions were pending, an act was passed, the first section of which is as follows:

"That the election held in the town of Fulton,   *   * on the first Saturday in May, 1884, be, and the same is hereby, declared lawful, as much so as though it had been held and conducted in every respect in strict compliance with the law authorizing the election to be held; and all the acts and doings of the trustees then selected, within the scope of the authority given the trustees of 'Carr Institute,' when elected, shall be, and are hereby, declared lawful."

And we will now consider what effect that act has upon the rights of the parties to these actions.

A general rule applicable to retrospective statutes is

as follows: "If the thing wanting, or which failed to be done, and which constitutes the defect in the proceedings, is something the necessity for which the Legislature might have dispensed with by prior statute, then it is not beyond the power of the Legislature to dispense with it by subsequent statute. And if the irregularity consists in doing some act, or in the mode or manner of doing some act, which the Legislature might have made immaterial by prior law, it is equally competent to make the same immaterial by a subsequent law." (Cooley's Constitutional Limitations, 463.)

The question then arises, whether the manner in which the election was held by which it is claimed the proposition for the subscription was carried, and the nine trustees were selected, is a mere irregularity or informality not affecting the substantial and vested rights of appellants as tax-payers.

It is true, that it is not indispensable to the validity of a statute providing taxation for a local purpose, that a majority, or any number of those to be taxed therefor, should, at an election, vote in favor of such taxation. And the Legislature might have authorized the subscription for the erection of the college building and the imposition of taxation upon the school district through the agency of trustees of "Carr Institute" named in the original acts, without submitting the proposition to the voters, or an election by them of trustees. (Slack v. M. & L. R. Co., 13 B. M., 22.)

But by the terms of the statutes of 1882 and 1884, the taxation was made to depend upon the sanction by a majority of the votes cast at an election to be held by officers appointed and qualified according to law,

not by a self-appointed and irresponsible private per-son, and the power to impose and cause to be collected the taxes was conferred only upon trustees duly and legally elected.

When these actions were commenced, "the law was, therefore, for appellants, and the court would have so adjudged." And, as has been held by this court, the Legislature has no right to intervene during the pen dency of an action, and declare "that certain acts which were unauthorized and illegal at the time of their com-mission should be deemed and held legal and valid," when the substantial rights of the parties, either plaint-iffs or defendants are thereby affected. (Gaines v. Gaines, 9 B. M., 295; Allison v. Louisville H. & W. R. Co., 9 Bush, 247.)

Of course this rule does not apply when the curative act relates only to irregularities or informalities. But we do not regard the attempted elections as merely de-fective, or irregular, but it was absolutely void, and con-conferred no authority upon appellees or any others to impose taxation on the district.

There was, then, in fact, nothing for the curative stat-ute to operate upon. And the recital in the preamble to that statute shows the Legislature never intended to render legal and valid what, as this record shows, was void. But it was therein erroneously assumed that the person who acted as clerk was duly elected and qualified to act, and recorded the votes upon a poll-book, under the supervision of judges of the election.

In our opinion, therefore, the act of January, 1886, did not, nor was intended to have the effect of render-ing valid the pretended election held in the manner and

by the person shown by this record. Consequently, the judgment of the lower court is reversed, and cause remanded with directions to perpetuate the injunction in each case.