CASE 73—PETITION EQUITY—MARCH 31.

# Marion County v. Louisville and Nashville Railroad Company.

APPEAL FROM MARION CIRCUIT COURT.

1. A TAX LEVIED BY A COUNTY TO PAY A TURNPIKE DEBT was not void, although there was not in existence any turnpike debt *eo nomine*. It was sufficient that there existed an indebtedness created on account of a turnpike debt.

2. CURATIVE STATUTE.—The Legislature has the power, by a subsequent healing statute, to validate a tax levy made without legislative authority, provided it could, in advance, have authorized the levy.

3. SAME.—The Legislature has no power pending litigation to pass an act having a retroactive effect in favor of one of the litigants. But the mere fact that, in a suit involving the validity of a tax levy for a particular year, the court has adjudged that it is invalid does not prevent the Legislature from passing an act validating similar levies for other

Marion County v. Louisville and Nashville Railroad Company.

years, even as against the same party, there being no litigation pending as to such levies at the time of the passage of the act.

SAM T. SPALDING FOR APPELLANT.

1. The Legislature may validate retrospectively the proceedings which it might have authorized in advance. (Cooley on Taxation, pages 306, 307, 311, 312; Hewitt's Appeal, 88 Pa. St., 55; Desty on Taxation, vol. 2, page 218; Mattingly v. District of Columbia, 97 U. S., 687; Cooley's Const. Limit., 371; Spencer v. Merchant, 8 Sup. Court Reporter, 921; Read v. City of Plattsmouth, 107 U. S., 208; Thornton, &c., v. McGrath, &c., 1 Duv., 354; H. & N. R. Co. v. Dickerson, 17 B. M., 176; Boardmen v. Beckwith, 18 Iowa, 292; Bartriff v. Remey, 15 Iowa, 258; Vaugh v. Suazzie, 56 Miss., 509; Schenley, &c., v. City of Alleghany, 33 Pa, 57; Grim v. Wessenburg School District, 57 Pa. St., 435.)

The Legislature has a right to levy or authorize a local tax for local purposes. (Cheaney v. Hooser, 9 B. M., 344.)

LEWIS EDELEN ON SAME SIDE.

The act of 1888 was a valid legislative levy. The Legislature may make a levy directly upon the property of a county. (City of Louisville v. Murphy, 86 Ky., 58; Cheaney v. Hooser, 9 B. M., 336; Cypress Pond Draining Co. v. Hooper, 2 Met., 353.)

The appellee can not complain that it is deprived of its property without due process of law. (Cincinnati, &c., R. Co. v. Commonwealth, 81 Ky., 492; s. c., 115 U. S, 321.)

Nor does the act in question disturb vested rights. (3 B., 264; 1 Duv., 354; Reed v. Plattsmouth, 107 U. S., 568; Thompson v. Lee County, 3 Wall., 327; Beloit v. Morgan, Idem, 623; Grenada County v. Brown, 112 U. S., 261; Anderson v. Santa Anna, 116 U. S., 356; Randall v. Krieger, 23 Wall., 137; Mattingly v. District of Columbia, 97 U. S., 687; Spencer v. Merchant, 125 U. S., 345; Schenley v. Com., 36 Pa. St, 29; Miller v. Graham, 17 Ohio St., 1; Abbott v. Lindenbower, 42 Mo., 162; Conway v. Cable, 32 Ill., 82.)

Retrospective laws have been condemned in this State only when they affected pending litigation.

W. J. LISLE FOR APPELLEE.

1. Under the decision of this court as to the levies of 1882, 1883 and 1884 the levies for 1886 and 1887 were void (L. & N. R. Co. v. Commonwealth for use, &c., 11 Ky. Law Rep., 734), and the Legislature had no right to cure them. (Norman v. Boaz, 85 Ky., 557; Cooley on Taxation, pages 227, 228; Cooley on Const. Limit., 463.)

So far as the twenty and one-half cents ad valorem tax for 1887 is concerned, the curative act has no bearing at all, because the county

had the right to make the levy if it owed any thing for county sub-
scriptions to turnpikes; but the debt did not exist, and, therefore, the
levy was void.

The other levies for general indebtedness for the year 1887 being
made without authority of law, were absolutely void, and, being so
could not be cured by subsequent legislation.

The rule that the Legislature has the right to cure any legislative
act it could have originally passed has its exceptions and limitations.
(Bank of Commonwealth v. Paton, 4 J. J. M., 195; Howard v. Ky.
& Lou. Ins. Co., 13 B. M., 285; Thweatt v. Bank of Hopkinsville, 81
Ky., 1; Allison v. Lou. & Harrod's Creek R. Co., 9 Bush, 254.)

CHIEF JUSTICE HOLT DELIVERED THE OPINION OF THE COURT.

The Marion County Court, for the year 1886, levied
for county purposes not only a head tax, but twenty
cents for turnpike roads and thirty cents for general
purposes upon each one hundred dollars of taxable
property in the county.   In 1887 it levied the same
head tax, and also ten cents jail tax, twenty cents
turnpike tax, and fifteen cents for county indebted-
ness upon each one hundred dollars of taxable prop-
erty.   The appellees paid the turnpike tax of 1886,
but resist the payment of the thirty cent tax of that
year for general county purposes.

The tax of 1887, to pay for the building of the
county jail, is not in contest.   It is suggested that
it has been paid; but the appellees deny the right
of the county to compel the payment for 1887 of the
twenty cent turnpike tax and the fifteen cent tax to
pay county indebtedness.

The answer denies the existence of any legislative
authority in the county court to levy the turnpike
tax.   The act of April 19, 1882, however, expressly
gives it (2 vol., Acts 1881, page 664), and the power
is conceded in argument; but it is said there was no

turnpike debt in 1887, and that a tax levy to pay
what is not owing is void, because there is no taking
of private property for public use, but a taking when
no use exists. It appears, however, that in 1885 there
was a deficit as to the county indebtedness of several
thousand dollars. It was carried to 1886, when it was
still more. We can not tell how much of it was
turnpike indebtedness. This is not shown by the
record, but at least a portion of it accrued on that
account. The money to pay this deficit was borrowed
from the sinking fund of the county, and the county
clerk testifies that at the time of giving his deposi-
tion (1889) it had not been repaid. While, therefore,
there may not, in 1887, have been any turnpike debt
*eo nomine* owing, yet an indebtedness existed which
was created on account of it. It is said, however,
that, considering the value of the property of the
county, the turnpike tax of twenty cents for 1886
was certainly sufficient to discharge all the turnpike
debt of the county existing in that year. This is
not shown, however, and, as already stated, it was
still owing at a subsequent date.

As to the levy in each year to pay the general indebt-
edness of the county, it is said that there was then no
law authorizing the levy of an *ad valorem* tax for this
purpose. This is true. The statute did not authorize
such a tax, but only a head tax for county purposes
generally. The Legislature, however, passed an act
on April 10, 1888, which, after reciting that these
levies had been made and the existence of doubts as
to their legality, declared them "valid, and in full
force and effect as fully as if said county court of

levy and claims had been empowered to levy said amount for the purposes mentioned in said levies." (Volume 2, Acts 1887-8, page 1067.)

It is contended that the levies, when made, were void for the want of legislative authority to make them, and that the Legislature could not, therefore, by subsequent legislation, make them valid. The county court had power to levy a head tax to meet the general indebtedness of the county. It could not levy the particular tax in contest. It had power to act upon the subject; it had jurisdiction to levy a tax for the purpose, but not one of a certain character. The power conferred was so restricted as not to embrace it. The levying of it, therefore, was a case of irregularity, and not of want of jurisdiction. If a town having legislative authority to create town liabilities contract one outside of its authority, but for a town purpose, the debt might undoubtedly be validated by retrospective legislation. This case, it seems to us, would fall within the same rule. Unquestionably, the Legislature could, in advance of the making of these levies, have authorized them; and where this is so, it may, by a subsequent healing statute, validate them, though no authority existed at the time of their creation. This legislative power is, of course, confined to validating acts which the Legislature could antecedently have authorized. The exercise of such a power is not forbidden by our State Constitution, and while retrospective legislation is, in the main, impolitic, yet the rule above stated has been often declared. (Cooley on Taxation, page 305.) These levies were not for an illegal purpose. They

were permissible by legislative authority in advance. The power to pass the curative act, therefore, existed, and it is equivalent to an original authority. Acting upon this rule, it has been held that an act validating the void judicial sale of an infant's property is constitutional; also an act validating municipal bonds void when issued; and validating a void power of attorney executed by a *feme covert*. (Thornton v. Mc-Grath, 1 Duvall, 354; Boyce, &c., v. Sinclair, 3 Bush, 261; Read v. Plattsmouth, 107 U. S., 568.)

There has been no impairment of any contract or vested right in this case. The rule relating to such cases has no application here. There is no contract between the tax-payer and the governmental power, which protects him and his property, and to which he must, therefore, pay the tax as a duty he owes to it, and instead of this curative statute impairing a vested right, it merely takes away the opportunity to avoid the discharge of a duty. The existence of general indebtedness by the county when these levies were made is virtually admitted, and if it were not, it is shown. · Equitably it was the duty of the appellees to discharge their fair proportion of it, and the act which is now assailed as unconstitutional merely prevents them from acting unjustly by refusing to bear their equal portion of a common burden, from the imposition of which they, equally with others, receive a benefit. The constitutional provision forbidding the impairment of a vested right by legislation was never intended to apply to such a case. One should have no vested right to do wrong or act unjustly, and courts decline to regard that as a vested right which

is contrary to justice and the equity of the case. These levies were of uniform operation. They imposed a public tax, common to all the tax-payers of the county, for a local purpose, which may be done. Nor can it be said that the Legislature has intervened in pending litigation, and thus invaded the domain of the judiciary. It is true if the Legislature, during the pendency of litigation, were to pass an act having a retroactive effect in favor of one of the litigants, it would be an invasion by one independent department of the government of another, and, therefore, unconstitutional. (Thweatt, &c., v. Bank of Hopkinsville, 81 Ky., page 1.) But this has not been done in this case. It is true the act in ques tion was passed after the lower court, in another action between these parties, had passed upon the validity of another levy for a different year by the Marion County Court; but this fact should not lead to our declaring this act unconstitutional. It does not relate to that litigation, and a court should not declare it unconstitutional, unless clearly required to do so.

For the reasons indicated, the judgment dismissing the petition is reversed, with directions to render a judgment in conformity to this opinion.