## State Highway Commission v. Mitchell et al.

(Decided December 15, 1931.)

554

J. W. CAMMACK, Attorney General; C. E. SMITH, Assistant Attorney General; C. C. WILLIAMS; and JAMES DENTON for appellant.

HIRAM OWENS, VIRGIL SMITH, and C. R. LUKER for appellees.

OPINION OF THE COURT BY HOBSON, COMMISSIONER—
Reversing.

For many years before 1924 there had been two routes for the travel between Somerset and London. One known as the southern route by way of Rockcastle Springs, and the other known as the Swiss Colony or northern route. Chapters 197 and 210 of the Acts of 1924 are in these words:

"That there is hereby added to the State primary system of roads the route from Somerset in Pulaski county to London in Laurel county, by way of Ruth, Dykes, Mt. Victory and Rockcastle Springs, and the same to be known as project No. 24½." Acts 1924, p. 534.

"There shall be added to the primary system of State highways as defined in section 5 of the Acts as provided in chapter 17 of the Acts of the General Assembly of 1920, the following project:

"From London, Laurel County to Somerset, Pulaski County." Acts 1924, p. 543.

The state highway commission is authorized by statute to determine the order in which the roads in the system shall be constructed. Acting upon the ground that both acts were in force and that by the second it was authorized to locate the road as it thought best, if it did not then improve the road set out in the first act, the state highway commission surveyed and was taking steps to build a road on the Swiss Colony or northern route under the second act and not the southern route set out in the first act. After this a new state highway commission was appointed, who approved the action taken by the former board which had been approved by the federal aid engineer, who had agreed to contribute to the building of the road on this route, but had not agreed to contribute to the building of the road on the southern route. Appellees, who were property owners in Pulaski county and in Laurel county, and directly affected, brought this action to enjoin the state highway commission from building the road on the northern route. The issues were made up. Voluminous proof was taken and on final hearing the circuit court entered this judgment:

"It is the opinion of the court that road route called in the record the northern route or Swiss Colony route and the route adopted by the defendants and over which they located the road to be constructed connecting the city of Somerset in Pulaski county with the City of London in Laurel County as a primary road or highway in the primary system of highways in Kentucky, is not one of the routes or projects on or over which one of the primary roads of the state can be located or constructed, and is not a route included in the state highway system of primary roads connecting the said two county seats or cities or at all, and that the order of the defendant, State Highway Commission, entered on its records on December 11, 1928, or at any other time, was entered without authority of law, and the action of the said Commission in adopting and substituting said route for the route fixed by the legislature or approving the location of the said road on said route was not authorized by law and was without any authority therefor and is null and void and should be cancelled and set aside."

"It is further adjudged that when the primary road connecting the City of London in Laurel county

and the City of Somerset in Pulaski county is constructed by the State Highway Commission it shall be constructed on and over the route No. 24½ or 24A, known as Sublimity Route, as fixed and located by legislative acts, running from Somerset, Kentucky to London, Kentucky, by way of Ruth, Dykes, Mt. Victory and Rockcastle Springs to London and on the reverse from London to Somerset, allowing and permitting such deviations as are necessary for proper location and construction.''

The defendant appeals, insisting that the two acts were not properly construed by the circuit court. On the other hand, the appellees insist that the two acts must be read together, and that chaper 197 simply made that definite which was left indefinite in chapter 210. Chapter 197 was House Bill 562, passed the House on March 15, 1924, and passed the Senate March 18, 1924. Chapter 210 was Senate Bill 192, it passed the Senate February 14, 1924, and passed the House March 7, 1924. The House Bill starts the road from Somerset and defines the route. The Senate Bill starts it from London and names no intermediate points. When the judgment in this case was rendered the Legislature of 1930 was in session, and soon thereafter, and before anything had been done under the judgment it passed this act.

''1.   That there is hereby established as a part of the Primary System of State Highways of the Commonwealth of Kentucky a road running from London in Laurel county, by way of the Swiss Colony Route as located by the State Highway Department and approved by the State Highway Commission on December 11th, 1928, to Somerset in Pulaski county.

''2.   The construction, maintenance, supervision and control of said road shall be subject to all the terms and conditions set out and provided for in chapter 17 of the Acts of the General Assembly of 1920, establishing and creating a primary system of state highways.'' Acts 1930, p. 838, c. 427.

This controversy had been going on for some time before the General Assembly met, and the judgment herein was rendered while the Assembly was in session. The courts take judicial knowledge of the acts of the General Assembly. The act of 1930 added the northern

route to the primary system and gave the commission the authority to build a road on the northern route, and removed the objection made in this suit that the northern route was not in the primary system. Under that act the commission now has authority to build a road on the northern route. The act of 1930 was plainly intended to clarify the meaning and effect of the two acts passed in 1924.

The injunction in this case mandatorily requires the state highway commission to build this road on the southern route whenever it undertakes its construction. Whether the trial court was justified in requiring the highway commission to construct this road on the southern route, as the statutory situation existed under the two acts of 1924, need not now be determined, because plainly the court could not preclude the highway commission from constructing a road on some route other than the southern route, should it thereafter be so authorized by the Legislature. Therefore to the extent that the injunction precluded the highway commission from ever thereafter building the road other than on the southern route, it was too broad. By the act of 1930 he Legislature had authorized the highway commission to build a road between London and Somerset on the northern route. It is settled that a vote of the people of a county authorizing the issuance of bonds for the construction of roads and bridges as state primary highway projects included such roads thereafter designated as well as those in existence at the time. Mercer County Fiscal Court v. Slaughter, 234 Ky. 686, 28 S. W. (2d) 986.

But it is argued that the act of 1930 was invalid because it was retroactive and impaired vested rights. The argument assumes a fact that does not exist.

The addition of new roads to the primary system does not impair a vested right. Indeed, the abolition of a road is within the power of the state. Bradbury v. Walton, 94 Ky. 167, 21 S. W. 869, 14 Ky. Law Rep. 823; Moore v. Polsgrove, 219 Ky. 410, 293 S. W. 965; Ill. Cent. R. R. Co. v. Ward, 237 Ky. 478, 35 S. W. (2d) 863. Obviously no taxpayer of the counties involved could complain of additional roads being built in those counties.

It is an accepted principle of constitutional law that legislative power is limited by the supreme law and may not affect, impair, or destroy rights of parties litigant vested before the legislation is enacted. Gaines v.

Gaines, 9 B. Mon. 295, 48 Am. Dec. 425; Cabell v. Cabell, 1 Metc. 319; Hedger v. Rennaker, 3 Metc. 255; Allison v. L., H. C. & W. Ry. Co., 9 Bush 247; Id., 10 Bush 1; Thweatt v. Bank of Hopkinsville, 81 Ky. 1; Norman v. Boaz, 85 Ky. 557, 4 S. W. 316, 9 Ky. Law Rep. 127; Marion County v. L. & N. R. Co., 91 Ky. 388, 15 S. W. 1061, 12 Ky. Law Rep. 961; Turner v. Town of Pewee Valley, 100 Ky. 288, 38 S. W. 143, 688, 18 Ky. Law Rep. 755. These cases were reviewed by the United States Circuit Court of Appeals and adverted by the Supreme Court of the United States in the case of L. & N. R. Co. v. Western Union Telegraph Co., 268 F. 4, affirmed 258 U. S. 13, 42 S. Ct. 258, 260, 66 L. Ed. 437. In its opinion the Supreme Court said:

"We have considered the cases and their incidents. It is not necessary to review them. There is a marked distinction between them and the case at bar. They all concerned the litigation of private rights and relations, and legislation which attempted to change those rights and relations by changing the conditions upon which they depended. The legislation in the case at bar has a different purpose. It is directed to that which is conceived to concern the public interest; an exertion of power in the public interest of which the companies are the instruments or agents. It is not, therefore, within the principle of the cases cited against it."

It will be seen that the present case is governed by the same considerations, and is resolved by like reasoning.

It is apparent from the order of the fiscal courts of the two counties that there was no definite location of the roads on which the bond money should be spent, and the cases of Percival v. City of Covington, 191 Ky. 337, 230 S. W. 300; Scott v. Forrest, 174 Ky. 674, 192 S. W. 691; Hall v. Montgomery County, 192 Ky. 716, 234 S. W. 274; Reynolds v. Bracken County, 192 Ky. 180, 232 S. W. 634; and Smith v. Livingston County, 195 Ky. 382, 242 S. W. 612, are not applicable.

But a further important question is presented by the record as it affects Laurel county.

Prior to July 1, 1926, Laurel county had voted a bond issue of $200,000 for the purpose of building roads and bridges. That county entered into an agreement

with the state highway commission by the terms of which the entire sum of $200,000 was to be turned over to the state highway commission upon condition and with the understanding that the state highway commission would supplement the fund with $600,000, and expend the entire $800,000 in the construction and reconstruction of that portion of the state primary system of roads in Laurel county not theretofore constructed and not then maintained by the state. The third section of the agreement was as follows:

> "Third: It is agreed and understood that under this agreement the county is to put up a sum total of $200,000 and the State is to put up a sum total of $600,000 and that $800,000 will be spent on the State Primary System of Roads as above set out to construct the roads as far as funds will go and that the order in which the roads will be selected will be left to the discretion of the State Highway Commission and the Fiscal Court; it being the purpose to select the roads in the order of their importance to the people. It is further understood that in the expenditure of the $600,000 of State money on account of the volume of the work and the large amount of State funds necessary that it will take a period of approximately four or five years after June 30th, 1928, for the State to fully comply with its portion of this agreement."

The bond money was then paid to the state highway commission and expended by it in accordance with the agreement. But it has not expended any part of the $600,000 to be furnished by the state in Laurel county, and the attempt to spend such funds on the northern route was without the consent or agreement of the fiscal court of Laurel county. It is conceded that the agreement was made and partly carried out, but it is now contended that the contract was invalid.

The validity of kindred contracts has been sustained. Crick v. Rash, 190 Ky. 820, 229 S. W. 63, Lawrence County v. Lawrence Fiscal Court, 191 Ky. 45, 229 S. W. 139. But it is said that the particular agreement is invalid because the state highway commission could not confer any part of its power, or delegate any portion of its discretion, to the fiscal court, and the obligation to expend $600,000 of the state road fund exceeded the limit for the biennial period involved and was void under the

opinion of this court in the case of Billeter & Wiley v. State Highway Commission, 203 Ky. 15, 261 S. W. 855.

The state highway commission did not surrender or limit its discretion when it made the agreement in question. It properly exercised its discretion by agreeing with the county to consolidate the funds and to cooperate with the fiscal court in selecting the order of construction of the primary system of roads. It was not unreasonable to provide for a concurrence of the local with the state authority in proceeding with a public improvement in which both were interested. The matter to be decided was one of orderly procedure, and not a matter about which the state highway commission was forbidden to consult local interests. It retained its full power subject to the condition that it would consult the fiscal court as to the order in which it would expend the money on the state system in Laurel county. Hence the county, having fully performed its part of the agreement, was entitled to be consulted and to have its consent obtained as to the order in which the whole fund would be expended therein. It appears that the state highway commission is now prepared to expend the money in Laurel county, and if the parties are unable to agree upon the order of construction it does not result in delaying or defeating the contract. The court may settle the matter in the event of a failure or inability of the parties to agree. Slade v. City of Lexington, 141 Ky. 214, 132 S. W. 404, 32 L. R. A. (N. S.) 201, Joy v. St. Louis, 138 U. S. 1, 11 S. Ct. 243, 34 L. Ed. 843. The parties here concerned are important public officials, and now being advised of the law, and of their duties respectively, we have a right to assume that they will encounter no difficulty in reaching an agreement. If mistaken in this assumption, however, the authority of the court in the premises may be invoked by either party aggrieved.

The case of Billeter & Wiley v. State Highway Commission, 203 Ky. 15, 261 S. W. 855, is not applicable to the character of agreement involved in this case. The agreement with the fiscal court of Laurel county did not create a fixed obligation payable out of the revenue for any biennial period. It dealt with the order of expenditure when the money was available, and the state highway commission came to expend it. The commission was not awarding a contract for the construction of roads. It was preparing for the future construction of

roads when it had funds for the purpose available under the law. If the state highway commission had the right to agree with the county to obtain and to expend the bond money, as it undoubtedly did, it certainly had the right to settle then and there the policy it would pursue for such a reasonable time as was necessary to carry out the construction of the state primary system of roads in that county within the limit then fixed by it. And a valid agreement being made it could not be disregarded.

Pulaski county had no such agreement as Laurel county had, and it did not pay over any bond money to the state highway commission. The injunction granted by the circuit court is too broad, and should be limited so as to enjoin the expenditure of any of the $600,000 in Laurel county, except in accordance with the agreement respecting the matter.

Judgment reversed, with directions to enter a judgment in accordance herewith.

Whole court sitting.