# Shelley v. National Carbon Co. et al.

Feb. 25, 1941.

Edrington & Redmon for appellant.

Hubert Meredith, Attorney General, Robert B. Hensley and Elwood Rosenbaum for appellees.

OPINION OF THE COURT BY STANLEY, COMMISSIONER—Affirming.

The appeal is from a judgment confirming the denial by the Unemployment Compensation Commission of a claim of the appellant, Frank Henderson Shelley, for an aggregate of $225 under the Unemployment Compensation Law. Because the case calls for an interpretation of a recent statute and involves important principles, we have deemed it well to grant the appeal and deliver an opinion. Section 950-1, Statutes; Section 4748g-11, April, 1939, Supplement to the Statutes.

The appellant had been employed for some time as a traveling salesman by the National Carbon Company of Louisville, which was subject to the provisions of the law, upon a salary of $175 a month. His employment ceased October 31, 1937, and he applied for the benefits of the law on January 2, 1939. It is conceded that Shelley is entitled to recover (1) if his claim is to be determined by the Act of 1936, Chapter 7, Acts of the Fourth Extraordinary Session of 1936, or (2) if he received in October, 1937, as much as $200 in wages as defined in the 1938 Act, Chapter 50; Acts of 1938, Section 4748g-1 et seq., April, 1939, Supplement to the Statutes.

Appellant contends that his right to benefits became vested under the 1936 act which was in effect at the time he became unemployed and that the legislature was without constitutional authority to impair that right because of Article 1, Section 10, of the Constitution of the United States, and Section 19 of the Constitution of Kentucky, prohibiting the enactment of any ex post facto law or law impairing the obligations of a contract. We think the premise of the argument is a false assumption. No claim could be asserted under the 1936 law before January 1, 1939, and the right to recover was dependent upon certain conditions and contingencies. It was, therefore, a contingent and not a vested right. 11 Am. Jur., Constitutional Law, Section 370; State Highway Commission v. Mitchell, 241 Ky. 553, 44 S. W. (2d) 533. Moreover, it was expressly stipulated in Section 20 of the act:

"The General Assembly reserves the right to amend or repeal all or any part of this Act at any

time; and there shall be no vested private right of any kind against such amendment or repeal. All the rights, privileges, or immunities conferred by this Act or by Acts done pursuant thereto shall exist subject to the power of the General Assembly to amend or repeal this Act at any time."

Therefore, all of the appellant's rights were subject to this reservation or action which might be taken under it. They are determinable by the changed remedial provisions of the law which became effective March 5, 1938.

■ Section 9 of the Act of 1938, published as Section 4748g-9, of April, 1939, Supplement to the Statutes (to be distinguished from Section 9 of the Act of 1940, published as Section 4748g-9 of the May, 1940, Supplement to the Statutes), prescribes as a condition of eligibility to the benefits of the law that the unemployed worker "has within the first four out of the last five completed calendar quarters immediately preceding the first day of his benefit year, earned wages for covered employment by subject employers equal to not less than Two Hundred Dollars." The term "calendar quarter" is defined as "three consequtive months beginning on January 1st, April 1st, July 1st or October 1st." Section 3, Chapter 50, Acts of 1938. Since the first day of Shelley's "benefit year" was January 1, 1939, the "last five completed calendar quarters immediately preceding" commenced fifteen months before that date, that is, on October 1, 1937. It was, therefore, required that Shelley should have earned not less than $200 during the period, and, as he was employed only during the month of October, 1937, it was necessary that he establish that he earned wages in that one month of not less than that sum. As already stated, Shelley was paid only $175 salary in that month. To reach the minimum of $200, he counts on a saving from money paid as traveling expenses.

The company's salesmen were expected or allowed to occupy a first-class room in a first-class hotel, to have substantial meals, and to pay the usual tips. They were permitted to render expense accounts consistent with such standard of living, even though they did not actually live on that scale, that is to retain whatever difference they might save by living on a lower standard. Shelley collected from his employer in October $175.10, reported as traveling expenses, but he had not in fact, he testified,

spent that sum. He had saved $34.76 by economizing. He says that he was unusually economical during this month because of having received notice that he would lose his job on the 1st of November. If this sum that was saved from traveling expenses be regarded as wages within the meaning of the term as used in the Unemployment Compensation Law, then Shelley earned $209.86 in the stipulated period and, therefore, became entitled to the benefits claimed.

The terms "wages" is thus defined in Section 3 of the Act as:

> " 'Wages' means all remuneration payable for services, including commissions and bonuses, and the cash value of all remuneration payable in any medium other than cash. Gratuities and tips customarily received by an individual in the course of his employment from persons other than his employing unit shall not be treated as wages payable by his employing unit. The reasonable cash value ,of remuneration payable in any medium other than cash shall be estimated and determined in accordance with rules prescribed by the Commission. Amounts paid to traveling salesmen or other workers as allowance or reimbursement for traveling or other expenses, incurred on the business of the employing unit, shall be deemed to constitute wages only to the extent of the excess of such amounts over such expenses, actually incurred and accounted for by the worker, in accordance with rules prescribed by the Commission."

Appellant insists that the saving in his expense account retained is to be deemed as "excess of such amounts over such expenses actually incurred and accounted for by the worker." It does not appear that this excess was ever "accounted for" by the employee to the employer as such, or that it was used as the basis of contributions to the unemployment compensation fund. Upon this point we adopt the excellent opinion of the Honorable William H. Field, Judge of the Common Pleas Branch, Third Division, of the Jefferson Circuit Court, as follows:

> "The amounts involved are small, the principle large. The legislative intent in defining 'wages,' in the section quoted above, must be gathered from

the obvious purpose of the legislation as illustrated in related provisions.

"For the accumulation of the Unemployment Compensation fund, Section 4748g-7, Statutes, requires the employer: (1) To contribute amounts equal to certain percentages of 'wages' payable by him; (2) to withhold from his employees a certain percentage of the wages of each; (3) to account to th: Commission for such sums.

"It is obvious that certainty is a prime necessity. The employer must know surely the aggregate of wages and the individual amounts payable to his employees. Necessity for equal certainty is indicated in Section 4748g-9(a) (5) which measures an employee's eligibility for benefits by 'earned wages * * * equal to * * * Two Hundred Dollars.'

"Coming to Section 4748g-3, the definition (g) of 'wages' as 'all remuneration payable for services,' seems clear beyond misinterpretation. To extend that definition in conformity with the spirit of other sections, 'wages' may be said to mean all remuneration payable for services on the basis of which the employer is required to compute the percentage of his own contribution to the fund and to compute and account for the percentage of that of his employee.

"Continuing, the definition cited includes in 'wages' the 'excess' of allowances for expenses 'over such expenses actually incurred and accounted for by the worker.' I find in this evidence of the same requirement of certainty already illustrated. For example: a worker receives a fixed salary and a fixed expense allowance; he accounts to his employer for the excess of allowance over expenses; his salary and his savings out of his allowance constitute his 'wages'. Or, the worker, paying expenses, subsequently receives a stated sum; he reimburses himself for his outlay; he accounts to his employer; any excess of the reimbursing sum over actual expenses constitute 'wages.' In either case, any sum realized by the worker above expenses is a matter of record, and the employer with assurance may compute the percentages of his own and his em-

ployee's contributions to the unemployment fund. Illustration, rather than definition, of 'excess' is intended.

"Shelley received a salary of $175 in October, 1937. By padding his expense account, he received from his employer $34.76 more than he expended. He did not account to his employer for this secret profit. Had the incident occurred at a different time instead of at the close of Shelley's connection, the employer could not have considered this as a part of the total wages payable by it as the basis for computing its contribution to the fund or as a part of Shelley's wages in computing his contribution. Nor was this secret profit 'earned.' It was in no sense 'remuneration payable for services.' It was obtained by reporting expenses as $34.76 more than was actually expended. 'Wages' must mean the same in defining, in Section 4748g-9 (5), the standard of the employee's eligibility for benefits that it means in fixing, in Section 4748g-7, the basis for the percentage contributions of employer and employee's respectively, to the fund. Shelley's secret profits on his padded expense account cannot be added to his accredited salary to raise his 'wages' to the statutory standard of eligibility for benefits.''

We may add the suggestion that payment of taxes into the fund and benefits paid out of it are calculated upon actuarial principles, based upon wages earned and accounted for. Like the reserve of an insurance policy, theoretically the aggregate payment of premiums and increase through investment equals the insurance benefits to be paid. It is important, therefore, in theory, that the wages upon which tax contributions are calculated shall be fully accounted for to the Commission. To construe as wages some retained secret amount would be to violate the principle upon which the system is based.

In response to appellant's argument, we may also add that we do not say that it can never be held that the furnishing of board and lodging to an employee as part of his compensation will not be regarded as wages. Special provision was made in the 1938 Act for the consideration of expenses of traveling salesmen and to what extent the same should be regarded as wages. This spe-

508

cial provision makes inapplicable American Surety Company v. Underwood, Tex. Civ. App., 74 S. W. (2d) 551, relied upon by the appellant. This case involved the meaning of "earnings" of a traveling salesman as the basis of computing compensation for injuries sustained according to a Workman's Compensation Act.

Though it is provided that the Unemployment Compensation Law shall be liberally construed to accomplish its purposes, Section 21, of giving social security, and though we sympathize with the applicant, particularly because of the narrow margin by which he loses the benefits of the law, under which he made contribution, we are of opinion that the judgment confirming the finding of the Unemployment Compensation Commission should be and it is affirmed.