### LOUISVILLE & N. R. CO. v. WESTERN UNION TELEGRAPH CO. *

(Circuit Court of Appeals, Sixth Circuit. July 29, 1920. On Application for Rehearing, October 15, 1920.)

#### No. 3320.

1. **Eminent domain ⬤⟿167(5)—Repealing statute held applicable to pending suit.**

    Ky. St. Supp. 1918, § 840a, providing that no right of way shall be taken by condemnation longitudinally along the right of way of any railroad company by any telegraph or telephone company, and repealing all acts in conflict therewith, *held* to apply to a pending suit by a telegraph company to condemn such right of way under Ky. St. § 4679c, which authorized such suits.

2. **Statutes ⬤⟿276(1)—Repealing statute applicable to pending suit.**

    Ky. St. § 465, providing that "no new law shall be construed to repeal a former law as to * * * any right accrued or claim arising under

the former law, or in any way whatever to affect * * * any right accrued or claim arising before the new law takes effect," *held* not to preserve the right of action of the plaintiff in a pending suit, where such right of action was given by a statute and has been expressly taken away by a later statute.

3. **Constitutional law** ⬅**280**—**Proceedings to condemn right of way gave no right which could not be withdrawn pending suit.**

Under a statute authorizing a telegraph company to maintain condemnation proceedings against a railroad company, and providing that it shall have the right to construct and maintain its line along the right of way of the railroad company on paying just compensation as therein provided, no vested right accrues to the telegraph company until final judgment in the condemnation suit and payment of the compensation fixed, and until that time authority to maintain the suit may be withdrawn by a repealing statute.

4. **Eminent domain** ⬅**168**—**Right to condemn property by telegraph company not aided by possession.**

The fact that a telegraph company, at the time of instituting a suit to condemn right of way for its line over the right of way of a railroad company, was in possession of and operating such a line, under a right acquired by a contract with the railroad company, which had expired, *held* to give it no better standing in the condemnation proceedings.

### On Application for Rehearing.

5. **Eminent domain** ⬅**320**—**Trial court's judgment does not vest title irrevocably in condemnor.**

Under Ky. St. Supp. § 840a, for condemnation of right of way for telegraph lines, which requires a judicial finding of the right to condemn, from which an appeal may be taken as well as from the award of damages, the title to the right of way does not become irrevocably vested in the telegraph company on judgment for condemnation in the trial court, from which an appeal is subsequently taken.

Appeal from the District Court of the United States for the Western District of Kentucky; Walter Evans, Judge.

Suit in equity by the Western Union Telegraph Company against the Louisville & Nashville Railroad Company. From an order denying a motion to dissolve injunction, defendant appeals. Reversed.

See, also, 207 Fed. 1, 124 C. C. A. 573; 252 Fed. 29, 164 C. C. A. 141.

Helm Bruce, of Louisville, Ky. (Henry L. Stone, Edward S. Jouett, and William A. Colston, all of Louisville, Ky., on the brief), for appellant.

Alex P. Humphrey, of Louisville, Ky. (A. E. Richards, Richards & Harris, and Humphrey, Crawford, Middleton & Humphrey, all of Louisville, Ky., and Rush Taggart and Francis S. Stark, both of New York City, on the brief), for appellee.

Before KNAPPEN, DENISON, and DONAHUE, Circuit Judges.

DENISON, Circuit Judge. Pursuant to a Kentucky statute of 1898 (Ky. St. § 4679c), the telegraph company, in December, 1911, began a proceeding to condemn an easement for a line of telegraph poles and wire over and along the right of way of the railroad company within

the state of Kentucky. The details of the situation involved are fully stated in the opinions of this court in the suits between the same parties, reported in 207 Fed. 1, 124 C. C. A. 573, in 249 Fed. 385, 161 C. C. A. 359, and in 252 Fed. 29, 164 C. C. A. 141. The condemnation proceeding came to a trial upon the law side of the court below, and resulted in a judgment of condemnation and an award of damages to be paid by the telegraph company to the railroad company in the sum of $500,000. The District Court granted a new trial. Upon the second trial, there was again a judgment of condemnation, and the damages were fixed, by direction of the court and upon the theory that only nominal damages could be recovered, at the sum of $5,000. This judgment was entered on February 16, 1916. On March 18, 1916, the telegraph company paid into the registry of the court the amount of this judgment and costs. A writ of error from this court was allowed on June 19, 1916, and on May 8, 1918, this court entered judgment reversing the judgment of the District Court and remanding the cause, with instructions to award a new trial generally upon the subject of compensation and to some extent upon the subject of necessity. 249 Fed. 385, 403, 161 C. C. A. 359. In March, 1919, the railroad company tendered and filed in the injunction suit (207 Fed. 1, 124 C. C. A. 573; 252 Fed. 29, 161 C. C. A. 141), a supplemental answer, alleging that the act of 1898, upon which the condemnation suit rested, had been repealed, and that further prosecution thereof would be in violation of the law. It thereupon moved to dissolve the existing injunction, so far as this pertained to Kentucky. It also filed, in the condemnation case, a motion for dismissal upon the same ground. The motion to dissolve the injunction as to Kentucky was denied, and the railroad company brings this appeal.

The substantial question involved is whether the repeal of the 1898 law was effective as against this pending proceeding, and all parties agree that this question may be considered and decided upon this appeal, without regard to the fact that it might be raised somewhat more directly in the condemnation case itself.

[1] The repealing law was approved March 14, 1916. It is given in the margin.[1] It is so plain that the interests of the owner are not

---

[1] "An act to protect railroad companies in the use and enjoyment of their rights of way by forbidding the condemnation thereof for other purposes.

"Be it enacted by the General Assembly of the commonwealth of Kentucky:

"Section 1. That no part of the right of way of any railroad company, or any interest or easement therein, shall be taken by any condemnation proceedings, or without the consent of such railroad company, for the use or occupancy of any part of such right of way, on, over and along such right of way longitudinally, by any telegraph, telephone, electric light, power, or other wire company, with its poles, cables, wires, conduits, or other fixtures; provided, that nothing in this section shall be construed as preventing any such wire company from obtaining the right to cross the right of way of a railroad company, under existing laws in such manner as not to interfere with the ordinary use or ordinary travel and traffic of such railroad company's railroad.

"Sec. 2. That all acts and parts of acts in conflict with this act be and the same are hereby repealed."

3 Carroll's Kentucky Statutes, § 840a; Session Acts Ky. 1916, c. 15, p. 69.

"taken," at least until the effective judgment of condemnation, and the language of this act of 1916 so explicitly forbids the taking of such an interest as is being sought in this condemnation proceeding, that it seems to have been taken for granted, in the court below as here, that the condemnation suit must fail [2] unless for one of the two special reasons urged against giving this new statute its seeming full effect. The first is that, by the force of a general rule of construction embodied in the Kentucky Statutes, the act of 1916 should not be construed as intended to reach pending cases; the second is that, if the Legislature did so intend, it had not the constitutional power.

[2] Section 465 of the Kentucky Statutes says, so far as now pertinent:

"No new law shall be construed to repeal a former law as to  *  *  *  any right accrued or claim arising under the former law, or in any way whatever to affect  *  *  *  any right accrued or claim arising before the new law takes effect.  *  *  * "

So far as concerns the claim that the pendency of a judicial proceeding as to the existing right or conditions is a controlling consideration, it will be apparent that this section (465) makes no direct reference to that subject. It does not say that no new law shall be construed to repeal another, so as to affect any proceeding pending, but speaks only with reference to its effect upon any "right accrued or claim arising under the former law" or "any right accrued or claim arising before the new law takes effect." Those "rights" or "claims" which are thus exempted might or might not be involved in pending judicial proceedings; that would be as it happened; but the exemption would be the same in either case.[3] In applying this statute (section 465) here, we must lay aside the fortuitous fact that judicial proceedings were pending, and consider merely whether the telegraph company's proposition that it could acquire this easement against the will of the railroad company was a "right accrued or claim arising under the former law," and this is much the same question hereafter considered under the other branch of the case.

In any event, section 465 does no more than lay down a canon of construction for doubtful cases. Except so far as it may embody the constitutional principle that vested rights may not be destroyed, it could not, if it would—and quite clearly it does not attempt to—make invalid any future act which should be made to repeal expressly a former law "as to rights accrued and claims arising" thereunder. It is only when the language of an act is vague and general, and might or might not fairly be taken to show an intent to affect a situation which had arisen under a former law, that the courts would go to section 465 to get a rule of construction.

We cannot find in the statute of 1916 any ambiguity which authorizes reference to section 465. Section 2 of the act repeals all former laws,

[2] Lewis on Em. Dom. (3d Ed.) § 380; Boone County Court v. Snyder, 9 Ky. Op. 921; Commonwealth v. Ewald Iron Co., 153 Ky. 116, 154 S. W. 931.

[3] If there were doubt about this, it would be resolved by the Pannell Case, infra, where suit was pending, but the "right" or "claim" was held not to be saved by section 465.

and, if it stood alone, there would be force in suggesting a resort to section 465; but section 1, in the most express language, forbids the rendering of the judgment which is demanded in the condemnation case. It says:

"No part of the right of way * * * or any interest or easement therein, shall be taken by any condemnation proceeding * * * by any telegraph * * * company," etc.

Whether or not it can be assumed that the Legislature had this particular condemnation in mind, we think that the intent to stop every such immature proceeding, whether initiated or not, is too clear for doubt; section 2 alone would do everything except arrest a case pending; section 1 could have had no purpose except that. Thus we must come to the question of power.

[3] The right of eminent domain is an attribute of sovereignty. The moment it is thought of as a private right, it ceases to exist. It is none the less a public right, because the state sometimes consents that it may be exercised by a quasi public corporation, like a common carrier. Such license or permission is granted because its exertion in that form is thought to be for the public interest. The statute of 1898 does not grant to or vest in the telegraph companies any property right. It permits them to proceed in their own names, but really on behalf of the state, with the preliminary proceedings to determine whether the condemnation is for the public interest, and to fix the amount of the damages, and then allows them to take the interest in question; but certainly nothing is "taken" until the judgment is obtained and its conditions performed. Until that time, the telegraph company has only a license to exercise, as the agent of the state, a portion of the sovereign power of the state. Even an express provision in such a statute that a subsequent Legislature could not recall the permission and cancel the license, if the steps preliminary to taking had been commenced, but had not ripened into a private right, would doubtless be invalid, because one Legislature cannot limit the governmental power of its successor. The ordinary rules of mutuality lead to the same result. The condemnor may abandon the proceedings, if he thinks the award is too high. Can the state be irrevocably bound, when its licensee has only an option? These considerations lie at the base of the matter now involved, and are so familiar that they need only be stated.

The subject-matter involved is the easement over the railroad right of way. We do not see how it can be claimed that the telegraph company, by filing its petition for condemnation and going to trial on the issue, acquired any right to or interest in this easement. The language of the statute is that it shall "have the right" to construct and maintain its line along the railroad right of way—when? "Upon making just compensation as hereinafter provided"; that is to say, after obtaining a judgment and paying the fixed amount. Until that time the statute does not purport to grant any right.

Nor can we think that any now existing right was acquired by the payment into court of the amount of the judgment. That judgment was reversed. With exceptions not here important, a judgment which is reversed and set aside is as if it had never been. When plaintiff

recovers a judgment upon conditions, he surely cannot, by immediate performance of the conditions, deprive the defendant of the right to go to the reviewing court and get the judgment set aside; yet to this point necessarily comes the claim that, by paying the judgment into court, plaintiff acquired some kind of an interest which was vested, so that it was entitled to protection therein. Upon the new trial which was awarded, there might ordinarily be a judgment that there could be no condemnation at all; and although there was a complete new trial ordered here only as to compensation, the next jury might fix an amount which the telegraph company would not pay.

When the judgment and payment of February and March, 1916, are put out of view, it becomes clear that such inchoate claim as the telegraph company had to this right of way on June 12, 1916, was not such a vested property right or interest as is reached and protected by the "due process" clause of the Fourteenth Amendment to the Constitution of the United States, or the corresponding clause of the Constitution of Kentucky, but was rather a claim, the continued existence of which was contingent upon the existence of the supporting statute, and that, when the statute was repealed, the inchoate right fell with it. Baltimore Co. v. Nesbitt, 10 How. 395, 398, 13 L. Ed. 469; Garrison v. New York, 21 Wall. 196, 205, 22 L. Ed. 612; Manion v. Louisville Co., 90 Ky. 491, 495, 14 S. W. 532; Sandy Valley & Elkhorn Ry. Co. v. Bentley, 161 Ky. 555, 559, 171 S. W. 178.

[4] It is sought to escape from this hardly questioned general rule by force of the fact that the telegraph company was in possession of the easement when the repealing statute was passed. If this possession had been acquired through or even in contemplation of the condemnation proceedings, it would be necessary to consider its force; but that was not the character of the telegraph company's possession. It had been acquired by contract with the railroad company many years before, and when the contract right expired the telegraph company had continued to stay in possession without any surrender or reacquirement. It is true it had obtained the aid of an injunction to maintain this possession pending the condemnation, but this injunction is in no way equivalent to an ouster and re-entry; it was rather collateral to the continuing, undisturbed possession which the telegraph company had acquired under a right foreign to any thought of condemnation. See 249 Fed. 385, 395, 161 C. C. A. 359. Such a possession cannot be thought of as a "right," which gives the telegraph company any better standing in the condemnation proceedings than it would otherwise have.

In concluding that, when the repealing act was passed, the telegraph company had acquired no "right" to condemnation in any pertinent sense of that word, we do not overlook the line of cases holding that one who commences a proceeding to condemn acquires thereby a priority of right as against a junior condemnor, who perhaps seeks to better his position by taking a deed from the owner. Cumberland v. Pine Mt., 96 S. W. 199, 28 Ky. Law Rep. 574; Sioux City v. Chicago (C. C.) 27 Fed. 774; Lewis, Em. Dom. (3d Ed.) p. 905. That there is such a priority of right as between two claimants does not per-

suade that either one of them has that kind of a right which will survive the repeal of the statute on which both are based.

The main reliance, however, of counsel for the telegraph company in this court, and of the court below in its careful opinion, is the proposition that the Legislature of Kentucky has no power to change the status of the parties in any pending litigation. This proposition does not depend on any express provision of the Constitution of the state, but on an implied prohibition said to be established by the Kentucky courts; and in examining whether such a prohibition exists, it must be remembered that, to be effective here, it is to be broad enough to extend to cases where no vested right is impaired—for this is such a case.

It must also be remembered that, in reviewing the decisions of the Supreme Court of a state upon a state law, as well as in considering those of the Supreme Court of the United States upon a federal law, we are bound only as to the very point decided, and not by general language extending further. In the familiar words of Chief Justice Marshall, in Cohens v. Virginia, 6 Wheat. 264, 399 (5 L. Ed. 257):

"General expressions, in every opinion, are to be taken in connection with the case in which those expressions are used. If they go beyond the case, they may be respected, but ought not to control the judgment in a subsequent suit, when the very point is presented for decision. The reason of the maxim is obvious," etc.

There are said to be nine Kentucky decisions supporting the proposition. They are cited in the margin.[4] A careful study of them shows the error of this contention—at least, so far as concerns the present applicability of the proposition. They all purport to be based upon Gaines v. Gaines; but the only matter there really decided was that the Legislature could not invade the province of the judiciary, and change the rights of one specific person after the controversy had arisen which fixed those rights. The fact that litigation was pending as to these rights was mentioned by the court; but this was a convenient manner of reference to the fact that the rights had become either vested rights, in the full sense of that term, or at least so fixed that it had become a judicial function to examine and determine what they were. Substantially the same situation existed in each of the other cited cases in which the legislation was held unlawful; the question was one of infringement by the Legislature upon the judiciary. The most that can be said of these cases, when decisions are distinguished from dicta, is that retroactive authority to lay a tax has been held bad in some cases where litigation was pending on the subject, and good where there was no suit in progress. This (possibly) anomalous result may depend on the peculiar character of the rights and powers involved. See decision in Manion v. Louisville. However, if we concede the existence of a rule

4 Gaines v. Gaines, 9 B. Mon. (Ky.) 295, 48 Am. Dec. 425; Cabell v. Cabell's Adm'r, 1 Metc. (Ky.) 319; Hedger v. Rennaker, 3 Metc. (Ky.) 255; Allison v. L., H. C. & W. Ry. Co., 9 Bush (Ky.) 247; Allison v. Railway, 10 Bush (Ky.) 1; Thweatt v. Bank of Hopkinsville, 81 Ky. 1; Norman v. Boaz, 85 Ky. 557, 4 S. W. 316; Manion County v. L. & N. R. Co., 91 Ky. 388, 15 S. W. 1061; Turner v. Town of Pewee Valley, 100 Ky. 288, 38 S. W. 143, 688.

on this subject, peculiar to Kentucky, it does not reach the present case. It is concisely stated in Turner v. Pewee Valley, where the opinion says:

"This court has repeatedly held that no legislation can affect the rights of parties litigant enacted after the institution of the suit."

As we have pointed out, the matter here involved was not a right in the sense in which that term is used in any of these cited opinions. It was a revocable license; and we are satisfied that the Court of Appeals of Kentucky never intended to, and never did, pass upon the real question here involved until it decided the case of Pannell v. Louisville Co., 113 Ky. 630, 68 S. W. 662, 82 S. W. 1141. It there appeared that a statute regulating the conduct of warehousemen provided penalties for its violation, and it also provided that the party injured might bring an action and recover for his own benefit the prescribed penalty. Such a penalty had accrued, and the party had brought an action, when the Legislature repealed the statute. Upon full consideration, it was held that the right of the plaintiff to recover had not been saved, either by the Legislature's lack of power to remit an accrued penalty, or by the effect of section 465 in saving existing rights. It is true that the court did not, in terms, refer to the constitutional limitation now invoked (a strange omission, if it is as far-reaching as is claimed); but we can see no distinction between that case and this, in the principles involved. The right to impose a penalty upon a citizen who disobeys the law, like the right to take a citizen's property by eminent domain, is a right of sovereignty. In either case the state, in pursuit of its public policy, may delegate to a citizen power to exercise the right; in either case the person to whom the right is delegated becomes a licensee, and may thereupon proceed in execution of the power; but in either case the power may be withdrawn pending the incomplete attempt to execute it.

Not only that, but the statutes involved in the two cases are so similar in form as to suggest that the repealing law in the condemnation matter was adopted from the repealing law in the warehouse matter. In each case the law had two sections. In the latter, section 1 repealed the law which authorized suit for a penalty, and section 2 declared that "no penalty provided in said act shall hereafter be recoverable." In the former, section 1 declared that "no right of way  *  *  *  shall be taken by any condemnation proceeding," and section 2 repealed the old law. There is no distinction in language between the two, save that in the penalty case the law says, "No penalty shall hereafter be recoverable," while in the condemnation case it says, "No right of way shall be taken." If any distinction thereby results, the use of the word "hereafter" would tend to show an intent not to apply to existing suits; but the Kentucky court held even that language to apply to such suits. Even if the questions of constitutional power and of applying section 465 were otherwise doubtful, we would be compelled to think them foreclosed for us by the decision in the Pannell Case. We may add that the "right" of the person injured by a warehouse overcharge to carry his pending suit to judgment and to collect the prescribed penalty is plainly not of less degree or dignity than the "right" of a telegraph company to pursue to the end its pending condemnation, where the

result will be only to give the company an option to take the property or abandon it. It cannot be that the former right may be destroyed by the Legislature, while the latter is inviolable.

Our conclusion is confirmed, when we remember that a license not coupled with an interest is revocable until executed, and when we compare the license granted by the condemnation act of 1898 with a private license. If we may suppose that A., owning land, had granted a revocable license to B. for a right of way thereover, in order that B. might reach the adjoining land of C., wherein B. claimed certain rights, and litigation was pending between B. and C., wherein B.'s contention involved and rested upon this license, it could not be thought that the pendency of this suit between B. and C. would, of itself, prevent A. from revoking the license, or that B.'s rights, which depended solely thereon, could survive the revocation.

Notice should be given to the case of Treacy v. Elizabethtown, 85 Ky. 270, 3 S. W. 168, upon which appellee relies. A special act provided for condemnation by a railroad. The prescribed proceeding was commenced by the railroad, an award of damages had, and the amount of the award paid into court. The property owner appealed, and secured a reversal, because the railroad had not proved the necessity of taking for public use. Pending this appeal, the Legislature repealed the special act, and substituted a more general law, differing in important particulars. A new trial was conducted under the repealed special act, and from the resulting judgment the property owner again appealed, thus presenting the matter decided by the opinion just cited. For reasons which are not now important, the court reached the conclusion that if, under the special act, the railroad had proved the necessity for taking, and an award had been made, and it had paid or tendered the amount of the award, it would thereby have acquired a vested and perfected right to enter upon and use the property—a right so unconditional that it could not have been affected by any subsequent reversal and new trial on the subject of damages.[5]

Upon the basis of this conclusion, the court holds that, since the railroad company had not thus acquired this kind and degree of a right before the repeal of the special statute, it was error to continue proceedings thereon. Since, in the present case and under the condemnation law of 1898, it is clear that the telegraph company had not acquired any vested right when the repealing act was passed, and that the reversal of the judgment (unlike the reversal contemplated by the special act in the Treacy Case) had retrospective effect to destroy the basis of any such right, the decision in the Treacy Case supports the present contention of the railroad company. If such a right as is acquired merely by commencing a condemnation suit, were sufficient to excite the saving action of section 465, or to invoke the supposed Ken-

---

[5] The court is apparently quoting from or paraphrasing the special act, when the opinion says: "Immediately after the return of the first verdict, and whether the same was set aside and a new jury ordered or not, the appellee had the right to enter upon the land and construct its road; and upon payment or tender of payment of the amount assessed, the appellee was clothed with the actual title to the property."

tucky rule that legislation may not change the status of parties in a pending litigation, the decision of the Treacy Case must have been the other way. It could not be of controlling importance in that case that a new law was substituted for the one repealed, while in the present case there was no such substitution. The question was whether the old law did or did not continue in force for the pending case.

We may add that further consideration of the case of Marion v. Louisville, etc., supra, seems to lead us inevitably to the conclusion that we are adopting. It was there held that the railroad company, prosecuting condemnation, could abandon the proceedings at any time, because it was merely exercising authority delegated by the state, and it should have the same right to abandon which the state concededly had. The statute of 1916 was only a method of directing the abandonment of all proceedings pending under the 1898 statute. The Marion Case can be distinguished only by saying that the agent may abandon, but the principal may not.

The impression easily arises that repealing legislation of this kind, which affects pending suits, is obnoxious to principles of fairness, but that is a question for the Legislature, and not for the courts. Nor is it wholly one-sided. It appeared beyond dispute in the previous phases of this litigation that the erection and maintenance of such a telegraph line would necessarily cause some degree of annoyance and embarrassment in the operation of the railroad. It is not necessarily arbitrary and unreasonable for the Legislature to think it will no longer lend its aid to one who is trying to locate such a line upon a railroad right of way against the will of the railroad, but will rather compel the telegraph company to buy its right of way from those who are willing to sell, or to use the roads and streets which the public owns.

We do not consider the matter foreclosed by our former mandate directing a new trial. The fact that the law of 1898 had been repealed did not then appear by the record in the case, and our mandate must be construed by the existing record. Since the only matter involved is as to the construction and validity of the law, there is no question of a permissible discretion exercised by the court below in refusing to dissolve the preliminary injunction.

The order must be reversed, and the case remanded, with instructions to dissolve the injunction, as to Kentucky, as prayed.

## On Application for Rehearing.

PER CURIAM. [5] In an application for rehearing, the telegraph company insists that by the law of Kentucky, when the jury in a condemnation matter assesses the damages and the condemnor pays or tenders the amount to the owner, the title vests, and is unaffected by any subsequent reversal of the award on appeal; that the condemnor's election, after the first award, to pay and take the property, is irrevocable; and that, where there are unknown or unreachable owners (as the mortgagees here), the statute may rightly provide (as this did) for payment into court in lieu of personal payment. It refers to several

Kentucky decisions in railroad condemnations [6] which hold that the immediate possession and use of the property may be had by the condemnor upon payment of the assessed damages, and that if, upon the statutory appeal for de novo trial, the damages are increased, the owner's remedy is a personal judgment for the excess.

We find nothing held in any of these decisions which necessarily reaches beyond a present and perhaps contingent possession, or which would deny the right of the owner to have possession returned to him if the damages, as finally fixed, were not paid—a protection which seemingly would be necessary under the Kentucky Constitution—or if the right to condemn should finally be denied. These decisions rest upon the peculiar nature of the railroad condemnation laws. In condemnation for railroad purposes the right is not usually disputed, but the amount of damages is the thing contested. It is therefore not necessarily inappropriate that the right of possession should at least contingently pass, pending a judicial review of the award, and on condition that the payment to be finally adjudged is properly secured. But see Covington Co. v. Piel, 87 Ky. 267, 8 S. W. 449. Perhaps upon this theory sections 838 and 839 of the Kentucky Statutes provide for assessment by commissioners, a report to the circuit court, an order of confirmation if there are no exceptions, and if there are exceptions a jury-trial as to the amount of damages. The statute does not in terms contemplate any review of the judgment so rendered, but provides that the railroad, on payment of the judgment, may take possession of, use, and control the property as fully as if the title had been conveyed. Some special charters upon which some of the cases depend expressly state that this possession may be maintained in spite of a new trial or further trial. It is in execution of a policy so declared that the conclusions of the Kentucky Court of Appeals, in the cases cited, have been reached; the right to condemn was not challenged, nor was any question involved, excepting as to damages. On the contrary, in Tracy v. Elizabethtown Co., 80 Ky. 259, it was recognized that the right to condemn may be disputed in the same proceeding or in an injunction suit, and the discussion found in that opinion must, we think, lead to the conclusion that if the right should finally be denied, the possession taken by the railroad must be given up.

The telegraph condemnation act here involved contains no corresponding provisions; on the contrary, it in effect declares that upon appeal there shall be supersedeas unless the condemnor gives a bond in double the amount (which was not done here). The statute expressly requires, as the first step, a judicial finding that certain conditions exist upon which the right to proceed further rests; an appeal from this finding, as well as from the award, is necessarily contemplated; it is not to be supposed that, while it is still open for the courts to decide that the right does not exist, the title may nevertheless become irrevocably vested in the condemnor. Even if there were in this statute provisions

6 Chicago Co. v. Sullivan, 24 Ky. Law Rep. 860; Hamilton v. Maysville Co., 84 S. W. 778; Long Fork Co. v. Sizemore, 184 Ky. 54, 211 S. W. 193; Shirley v. Southern Co., 118 S. W. 268; Madisonville Co. v. Ross, 126 Ky. 138, 103 S. W. 330, 13 L. R. A. (N. S.) 420.

more closely analogous to the railroad statute, we cannot think that the Kentucky courts would consider the title to be transferred and vested by a payment into court, which payment the owner refused to accept, and which was pursuant to a judgment later wholly vacated.

The application is denied; but our orders will be without prejudice to the right of the District Court to maintain the injunction for such brief period as may be necessary for the telegraph company, using care and diligence, to remove its property.