I am authorized to state that Justice WINANS joins in this dissent.

The STATE HIGHWAY COMMISSION of the State of South Dakota, on Behalf of and in the name of the STATE of South Dakota, Plaintiff and Appellant,

v.

Oscar WIECZOREK and the Federal Land Bank of Omaha, Defendants and Respondents.

The STATE HIGHWAY COMMISSION of the State of South Dakota, on Behalf of and in the name of the STATE of South Dakota, Plaintiff, Appellant, and Cross-Respondent,

v.

John B. GLAUS et al., Defendants, Respondents, and Cross-Appellants.

Nos. 11568, 11569 and 11606.

Supreme Court of South Dakota.

Dec. 22, 1976.

Carl W. Quist and Gary F. Colwill, Asst. Attys. Gen., Pierre, for plaintiff, appellant, and cross-respondent.

J. L. Morgan, Morgan & Fuller, Mitchell, A. P. Fuller, Kellar, Kellar, Fuller, Amundson & Furze, Lead, for defendants and respondents, Oscar Wiecozorek and The Federal Land Bank of Omaha, and defendants, respondents, and cross-appellants, John B. Glaus, Florine W. Glaus, and The Northwestern National Bank of Sioux Falls.

TALBOTT, Circuit Judge.

These condemnation proceedings were initiated in Brule County, South Dakota, by the plaintiff on April 27, 1973, under the then operative provisions of SDCL 31–29–12 and 31–29–14 which authorized the state "to acquire and improve strips of land necessary for the restoration, preservation and enhancement of scenic beauty within and adjacent to federal aid highways of this state * * *." Two motions brought by the defendants to dismiss the proceedings were ruled on adversely to the defendants by the then trial judge, Thomas L. Anderst. The defendants sought permission to file intermediate appeals with the Supreme Court of South Dakota, which appeals were denied on May 1, 1974. Following the remand to the circuit court of Brule County for further proceedings, the South Dakota Legislature enacted Ch. 204, S.L.1974, which became effective on July 1, 1974. This legislation deleted from SDCL 31–29–12 and 31–29–14 any references to "for the restoration, preservation and enhancement of scenic beauty within and adjacent to [federal aid] highways [of this state]."

Motions were again filed by the defendants seeking to dismiss the condemnation proceedings in these cases principally on the grounds that the legislative enactment had terminated the authority of the plaintiff to condemn land for the stated purpose. On July 29, 1974, the trial judge entered his orders dismissing the separate condemnations, and appeals were perfected by the plaintiff on October 7, 1974.

Defendants in the Glaus action perfected a cross appeal, primarily on the grounds that the trial court erred in not dismissing the condemnation proceedings on the basis of constitutional grounds, that the trial court lacked jurisdiction of the subject matter, and further that the original petition failed to state a claim upon which relief could be granted.

At oral argument, the principal issues discussed revolved around the questions as to whether or not:

1. The provisions of SDCL 31–8–7 would operate to effect the survival of the plaintiff's action, notwithstanding the 1974 law changes.
2. The provisions of SDCL 31–19–23, pertaining to the filing of a declaration of taking, operated to make the provisions of SDCL 31–19–1 to 31–19–20, inclusive, applicable to the taking authorized by the former provisions of SDCL 31–29–12 and 31–29–14.
3. The provisions of SDCL 2–14–18 (South Dakota's saving clause) operate to permit the survival of the condemnation action, notwithstanding the enactment of Ch. 204, S.L.1974.

That SDCL 31–8–7 would operate to permit the survival of this action cannot be seriously contended. It provides:

"For the purposes of this chapter, the highway authorities of the state, counties, cities or towns may acquire private or public property rights for controlled-access facilities and service roads, including rights of *access, air, view,* and *light,* by gift, devise, purchase, or condemnation in the same manner as such units are now or hereafter may be authorized by law to acquire such property or property rights in connection with highways and streets within their respective jurisdictions." (emphasis supplied)

It would indeed be strained construction to consider that the words "view" and "light" were synonymous with the former provisions of SDCL 31–29–12 and 31–29–14, authorizing acquisition by the plaintiff of strips of land "necessary for the restoration, preservation and *enhancement of scenic*

*beauty* within and adjacent to federal aid highways of this state." (emphasis supplied) Also, it appears from the original petitions of the plaintiff, and particularly from Exhibits "A" thereof, that the taking intended by the state was specifically brought under the provisions of SDCL 31–29–12 and 31–29–14 "for the restoration, preservation and enhancement of scenic beauty."

Inasmuch as our laws since March 14, 1963, have authorized the vesting in the state of title interest following the filing of a declaration of taking in certain condemnation proceedings (see SDCL 31–19–23 et seq.), we must determine if this particular procedure was available to the state in these actions as the plaintiff vigorously contends.

At the time the legislature enacted Ch. 85, S.L.1966, now codified as SDCL 31–29–12, 31–29–13 and 31–29–14, authorizing acquisition of land "for the restoration, preservation and enhancement of scenic beauty," the laws pertaining to the filing of a declaration of taking were not codified but appeared as Ch. 195, S.L.1963. When it enacted Ch. 85, S.L.1966, the legislature specifically directed that: "Such acquisition may be by gift, purchase, exchange, or by condemnation pursuant to the procedures provided by either SDC 1960 Supp. 28.13A for the condemnation of real property by the State Highway Commission, or SDC 1960 Supp. 37.40," neither of which latter citations provided for the filing of a declaration of taking with consequent immediate vesting in the state of the title interest.

■ Counsel for the plaintiff would have us now engage in an exercise of statutory construction so as to make available to it the vesting provisions of the 1963 law. It is a well founded legal principle that when the language of a statute is clear, certain and unambiguous, there is no occasion for construction and the court's only function is to declare the meaning of the statute as clearly expressed in the statute. *Kalmbach v. City of Mobridge,* 1964, 81 S.D. 158, 132 N.W.2d 293.

■ It is to be presumed that the legislature had, and acted with respect to, full knowledge and information as to prior and existing law and legislation on the subject of condemnation. 82 C.J.S. Statutes § 316, at p. 541.

By language which we believe to be clear and free from doubt, the legislature by its 1966 enactment directed that certain specified condemnation procedures should be followed and did not authorize the use of a declaration of taking with immediate vesting for the acquisitions to be made under the 1966 scenic beauty law.

■ It follows then that the plaintiff's use in these proceedings of the declaration of taking under the 1963 law was without authority of law and it must fail, and the state cannot be said to have a vested right in these proceedings brought to condemn land for the purposes set forth in SDCL 31–29–12.

In its appeals, the plaintiff further contends that its actions, having been commenced prior to the changes effected by Ch. 204, S.L.1974, in SDCL 31–29–12 and 31–29–14, are preserved by the operation of SDCL 2–14–18, South Dakota's saving clause. We do not agree.

■ It is general basic law that the effect of the repeal of a statute, where neither a saving clause within the repealing statute itself nor a general saving statute exists to prescribe the governing rule for the effect of the repeal, is to destroy the effectiveness of the repealed act in futuro and to divest the right to proceed under the statute which, except as to proceedings passed and closed, is considered as if it had never existed. See *Hutton v. Autoridad Sobre Hogares De La Capital,* 1948, D.C. P.R., 78 F.Supp. 988, 990.

In 82 C.J.S. Statutes § 434, at page 1008, it is stated:

"The general rule against the retrospective construction of statutes does not apply to repealing acts, which, in the absence of a saving clause or other clear expression of intention, are generally to be construed retrospectively. The repeal

of a statute has the effect, except as to transactions passed and closed, of blotting it out as completely as if it had never existed, and of putting an end to all proceedings under it, as discussed infra § 439. Every right or remedy created wholly by statute subsequently repealed falls with the repeal of the act which created it."

82 C.J.S. Statutes § 439, at page 1012, states:

"As a general rule the repeal of a statute without any reservation takes away all remedies given by the repealed statute and defeats all actions and proceedings pending under it at the time of its repeal. The rule is especially applicable to the repeal of statutes creating a cause of action, providing a remedy not known to the common law, or conferring jurisdiction where it did not exist before, and abates proceedings pending, even after judgment but before the entry thereof, or pending on appeal, as discussed in Appeal and Error § 1841. A suit the continuance of which is dependent on the statute repealed stops where the repeal finds it \* \* \*."

■ Thus, it can be said that the general rule is that the repeal of a statute cancels an action brought pursuant to that statute unless the action is permitted to survive by the operation of a saving clause or by the vesting of a right under the statute.

South Dakota's saving clause statute is contained in the provisions of SDCL 2–14–18 which provides:

"The repeal of any statute by the Legislature shall not have the effect to release or extinguish any penalty, forfeiture, or liability incurred under such statute unless the repealing act shall so expressly provide, and such statute shall be treated as still remaining in force for the purpose of sustaining any proper action or prosecution for the enforcement of such penalty, forfeiture, or liability."

This statute is identical with the old federal saving clause found at 1 U.S.C.A., § 29

(old citation) and currently found in 1 U.S. C.A., § 109.

An examination of the cases annotated thereunder indicates that the words "penalty, forfeiture, or liability" have been restrictively interpreted to apply only to criminal matters, tax matters, creditor's rights, liens, performance bonds, and forfeitures.

No case has been found which would make a saving clause applicable to the state's interest in a condemnation proceeding as falling within the purview of the "penalty, forfeiture, or liability" phrase.

■ The general law appears, however, to be that a saving clause is applicable to sustain rights of a private nature only, as opposed to rights of a public nature.

In this regard, in *Hutton*, supra, at page 993, there appears:

" 'Where a statute is repealed, a general saving statute operates to save any substantive right of a private nature, liability, right of action, penalty, forfeiture or offense which has accrued under the repealed statute.' "

And 82 C.J.S. Statutes § 440, at page 1016, states:

"Such saving provisions have been held to refer only to rights and interests of a private nature, which have been derived from a statute as distinguished from rights and interests derived from the common law, and have been held inapplicable to the repeal of a statute merely declaring a public policy."

And in 16 C.J.S. Constitutional Law § 254, at page 1245, it is stated:

"A right of action in favor of the public may be destroyed, since no rights vested in private persons would in this way be impaired."

The court in *Vail v. Denver Bldg. & Const. Trades Council*, 1941, 108 Colo. 206, 115 P.2d 389, further distinguished between private rights and remedies of a public nature created solely by statute as affected by a saving statute nearly identical with South Dakota's and held:

"*It is well established that where a statute gives certain rights of action upon grounds of public policy, no vested rights as to the continuance thereof are conferred*, and notwithstanding the existence of a general saving statute such as ours, the repeal of the provision takes away all its benefits as regards incomplete actions existing at the time of the repeal, whether they be pending in appellate or trial courts. *Western Union Telegraph Co. v. Louisville & N. R. Co.*, 258 U.S. 13, 42 S.Ct. 258, 66 L.Ed. 437, wherein the effect of a Kentucky statute generally similar to section 4, supra, was considered and held not be operative." (emphasis supplied) 115 P.2d at 392.

In a lengthy opinion dealing with this matter, the court in *Kemp v. Day & Zimmerman*, 1948, 239 Iowa 829, 33 N.W.2d 569, dealt extensively with the repeal of statutes creating strictly statutory rights and had this to say, commencing at page 586:

"It is a long-settled rule that a statutory right of action, whether based on a state or federal statute, may be taken away after it has accrued or is being enforced; and if the repealing statute contains no saving clause, the rights are lost to the holders. 16 C.J.S. Constitutional Law § 254, page 675."

The landmark case of *Western Union Telegraph Company v. Louisville & Nashville Railroad Company*, 1922, 258 U.S. 13, 42 S.Ct. 258, 66 L.Ed. 437 (cited in *Vail* and *Kemp*, supra), firmly established the law that is dispositive of these appeals. The telegraph company brought this proceeding to condemn an easement upon the right-of-way of the railroad company in exercise of a right conferred by a Kentucky statute. The first jury verdict was for $500,000, but a new trial was ordered and damages were assessed at $5,000. On March 8, 1916, the telegraph company paid into court the amount of the award and costs. The 6th Circuit Court of Appeals, 249 F. 385, reversed for a new jury trial not only on the question of damages but on the question of the interference by the easement with the use by the railroad of its right-of-way. On March 14, 1916, the legislature of Kentucky repealed the applicable condemnation statute.

Kentucky had a law, Section 465 (no other citation) providing: "No new law shall be construed to repeal a former law as to * * * any right accrued or claim arising under a former law, or in any way whatever to affect * * * any right accrued or claim arising before the new law takes effect. * * *" The court stated:

"The Telegraph Company insists that § 465 of the Kentucky statutes precludes the application of the Act of March 14, 1916, to the case, and such was the original view. We cannot accede to it. We agree with the circuit court of appeals that no right had accrued or claim arisen under the judgment of the district court within the meaning of § 465. Besides, as also pointed out by the circuit court of appeals, the Act of March 14, 1916, is general and absolute. It takes away the power to condemn the right of way of a railroad company by telegraph companies, and it does not save proceedings commenced before its applicable date. Such reservation is usual, if intended (*Baltimore & P. R. Co. v. Grant*, 98 U.S. 398, 25 L.Ed. 231), and is illustrated by *Pannell v. Louisville Tobacco Warehouse Co.*, 113 Ky. 630, 68 S.W. 662.

\*    \*    \*    \*    \*    \*

" * * * And, as we have seen, no rights had so far vested in the Telegraph Company as to preclude a change of policy or legislation which affected it.

"Of the effect of a reversal on appeal of a judgment and award in a condemnation proceeding and a repealing act, *Treacy v. Elizabethtown, L. & B. S. R. Co.*, 85 Ky. 270, 3 S.W. 168, is of pertinent reference. It is there held that if a judgment in condemnation proceedings be reversed on appeal (the conditions requisite to legal condemnation of the land not having been established) the case, upon reversal, stands upon the petition or application alone; and the proceedings being thus in

fieri, the law under which they were instituted could be repealed, and, if repealed, the subsequent proceedings must be under the new law. The principle was announced to sustain the repeal of the charter of a railroad company under which, upon the rendition of the verdict assessing damages for the property taken, the railroad had the right to enter upon the land and construct its road, and, upon payment or tender of payment, was clothed with title to the property. And it was said: 'The state has the right to say on what terms it will allow its right of eminent domain to be exercised, so long as anything remains to be done by the corporation in order to complete the condemnation of the land.' And necessarily, we may add, the state has a right to say upon what property or to what extent the right of eminent domain shall be exercised. The case seems a complete answer to the contentions of the Telegraph Company. (citations omitted)

\* \* \* \* \* \*

"Our conclusion, therefore, is that, as the state could have withheld the power from telegraph companies to condemn the right of way of railroad companies, the state could withdraw the power before its exercise, *and it could not be exercised before the conditions of condemnation were established and adjudicated, and this not preliminarily or dependently, but in final and unreviewable determination.* To this situation the condemnation in the present case had not attained. The grant of power to the Telegraph Company, therefore, was subject to legislative control, and the Act of March 14, 1916, was not an 'interference by the legislature with judicial proceedings in court,' and does not offend the 5th or 14th Amendment." (emphasis supplied) 258 U.S. at 19, 42 S.Ct. at 260, 66 L.Ed. at 442–443.

■ The proceedings before us clearly have the " 'congenital infirmity' " referred to in *Kemp,* supra, that our state's condemnation law is a statement of public policy and creates a statutory right in the state, a right that may be taken away as a matter lying solely within the control of our legislature.

Our own court in *Wentzel v. Huebner,* 1960, 78 S.D. 471, 104 N.W.2d 476, has held:

"In this jurisdiction the appeal is a continuation of the original action and not a separate proceeding. SDC 1960 Supp. 33.0104 (now SDCL 15–1–3) provides that: 'An action is deemed to be pending from the time of its commencement until its final determination upon appeal, or until the time for appeal has passed, unless the judgment be sooner satisfied.' " 104 N.W.2d at 478.

*Western Union Telegraph Company,* supra, is also given as the authority for distinguishing between the statutory grant of private rights and the statutory grant of public rights; see *State Highway Commission v. Mitchell,* 1931, 241 Ky. 553, 44 S.W.2d 533, wherein it was held:

"It is an accepted principle of constitutional law that legislative power is limited by the supreme law and may not affect, impair, or destroy rights of parties litigant vested before the legislation is enacted. *Gaines v. Gaines,* 9 B.Mon. 295, 48 Am.Dec. 425; *Cabell v. Cabell,* 1 Metc. 319; *Hedger v. Rennaker,* 3 Metc. 255; *Allison v. L., H. C. & W. Ry. Co.,* 9 Bush, 247; Id., 10 Bush, 1; *Thweatt v. Bank of Hopkinsville,* 81 Ky. 1; *Norman v. Boaz,* 85 Ky. 557, 4 S.W. 316, 9 Ky.Law Rep. 127; *Marion County v. L. & N. R. Co.,* 91 Ky. 388, 15 S.W. 1061, 12 Ky.Law Rep. 961; *Turner v. Town of Pewee Valley,* 100 Ky. 288, 38 S.W. 143, 688, 18 Ky.Law Rep. 755. These cases were reviewed by the United States Circuit Court of Appeals and adverted by the Supreme Court of the United States in the case of *L. & N. R. Co. v. Western Union Telegraph Co.,* 6 Cir., 268 F. 4, affirmed, 258 U.S. 13, 42 S.Ct. 258, 260, 66 L.Ed. 437. In its opinion the Supreme Court said: 'We have considered the cases and their incidents. It is not necessary to review them. There is a marked distinction be-

tween them and the case at bar. They all concerned the litigation of private rights and relations, and legislation which attempted to change those rights and relations by changing the conditions upon which they depended. The legislation in the case at bar has a different purpose. It is directed to that which is conceived to concern the public interest; an exertion of power in the public interest of which the companies are the instruments or agents. It is not, therefore, within the principle of the cases cited against it.' " 44 S.W.2d at 535.

*Western Union Telegraph Company,* supra, was again referred to in the case of *United States ex rel. T. V. A. v. Powelson,* 1943, 319 U.S. 266, 63 S.Ct. 1047, 87 L.Ed. 1390, with this comment:

"The fact that the owner also has a power of eminent domain does not alter the situation. See *Tacoma v. Nisqually Power Co.,* 57 Wash. 420, 433, 107 P. 199. The grant of the power of eminent domain is a mere revocable privilege for which a state cannot be required to make compensation. *Adirondack R. Co. v. New York,* 176 U.S. 335, 20 S.Ct. 460, 44 L.Ed. 492; *Ramapo Water Co. v. New York,* 236 U.S. 579, 35 S.Ct. 442, 59 L.Ed. 731; *Western U. Teleg. Co. v. Louisville & N. R. Co.,* 258 U.S. 13, 42 S.Ct. 258, 66 L.Ed. 437. A revocation of that privilege is but a recall of a part of its sovereign power for which no price may be exacted." 319 U.S. at 276, 63 S.Ct. at 1053, 87 L.Ed. at 1398.

Since the state's enactment of the condemnation right in the plaintiff to acquire premises for "scenic view," not a substantive right of a private nature, was an exercise by the state legislature of its sovereign right, the state had the right to say on what terms it would allow its right of eminent domain to be exercised and to say upon what property or to what extent the right of eminent domain shall be exercised. Since the state could have withheld the power from the plaintiff, the state could withdraw that power before its exer-

cise by the plaintiff. And in this case, the exercise of that power by the plaintiff, before the legislative repeal, was not complete, and the right of the plaintiff had not reached a stage of final and unreviewable determination. As held in *Vail,* supra, where a statute gives rights of action upon grounds of public policy, no vested rights as to the continuance thereof are conferred and a general saving statute does not operate to permit the right of action to continue or survive. *Western Union Telegraph Company,* supra.

The orders of the circuit court dismissing these actions are affirmed.

Because of the disposition of these appeals it is not necessary to consider the other matters presented by the parties on appeal.

DUNN, C. J., and ZASTROW, J., concur.

WINANS and WOLLMAN, JJ., dissent.

TALBOTT, Circuit Judge, sitting for COLER, J., disqualified.

WOLLMAN, Justice (dissenting).

I would hold that the declaration of taking procedure set forth in SDCL 31–19–23 was available to the state in these cases and that pursuant to SDCL 31–19–24 the state acquired a vested interest for scenic easement purposes that survived the repeal of that portion of SDCL 31–29–12 that authorized the State Highway Department to acquire strips of land necessary for the restoration, preservation and enhancement of scenic beauty.

SDCL 31–19–23 provides that the state may file a declaration of taking to acquire any land or easement or right-of-way pursuant to SDCL 31–19–1 to 31–19–20, inclusive, and Chapter 21–35. Once the declaration has been filed, the title to or the interest in the land affected by the declaration shall vest in the state. SDCL 31–19–24.

SDCL 31–19–21 provides that the proceedings provided for by SDCL 31–19–1 to 31–19–19 are not to be construed to impair

any provisions of SDCL 21–35, but are to be construed as additional and cumulative thereto. In other words, the state in this instance could have proceeded under the provisions of SDCL 21–35 to acquire the easements in question. I see nothing in SDCL 21–35 that refers to a declaration of taking, but clearly such a declaration is authorized under that chapter by virtue of the clear language of SDCL 31–19–23. It would be anomalous to hold that had the state proceeded pursuant to SDCL 21–35, as SDCL 31–19–13 clearly authorized the state to so do, the state could have filed a declaration of taking, but because SDCL 31–29–13 purportedly limits the state to the procedures provided by SDCL 31–19–1 to 31–19–22, inclusive, or Chapter 21–35, the declaration of taking procedure was not available to the state under the provisions of SDCL 31–19–1 to 31–19–22. By its very terms SDCL 31–19–23 provides that the declaration of taking procedure is available when the state proceeds pursuant to SDCL 31–19–1 to 31–19–20. That being the case, there was no reason for the legislature to make any specific reference to SDCL 31–19–23 in SDCL 31–29–13. The legislature must have assumed that the declaration of taking procedure would be just as much available to the state for the purpose of taking an easement for scenic beauty under the provisions of SDCL 31–19–1 to 31–19–22 as it would have been under the provisions of SDCL 21–35.

I am authorized to state that Justice WINANS joins in this dissent.