420 So.2d 887 (1982)
DIVISION OF WORKERS' COMPENSATION, BUREAU OF CRIMES COMPENSATION, Appellant,
v.
Yale Brevda, Appellee.
No. AD-439.
District Court of Appeal of Florida, First District.
October 8, 1982.
Rehearing Denied November 5, 1982.
*888 George W. Butler, Jr., Tallahassee, for appellant.
Stephen L. Rosen of Morris & Rosen, Tampa, for appellee.
*889 ERVIN, Judge.
The Bureau of Crimes Compensation appeals an order awarding certain benefits to the victim of a crime, and argues that the award entered was not made pursuant to the provisions of Chapter 960. We agree in part with appellant's arguments and so reverse in part, affirm in part, and remand for further proceedings.
Appellant first argues that the deputy commissioner erred in finding that Brevda had suffered a serious financial hardship pursuant to the terms of Section 960.13(7), Florida Statutes (1979),[1] and in not entering sufficient findings of fact to justify a lump sum award. The record, however, clearly reveals that the victim's income was adversely affected as a direct result of the assault, in that during the fiscal year beginning July 1, 1978, and ending June 30, 1979, appellee derived $21,000 in profits from his business, while in the next succeeding year his income dropped to $3,000, much of that amount having been earned in the three months before the injury which occurred on October 13, 1979. Although claimant began receiving $500 in monthly benefits from a disability insurance policy within 30 days after the assault, which sum was reduced to $250 per month in March, 1980, those amounts did not entirely compensate him for his loss of income as well as his out-of-pocket expenses for medical care and related costs.[2]
We therefore conclude that the deputy could lawfully determine that appellee suffered serious financial hardship as a result of loss of earnings or support and out-of-pocket loss incurred as a result of injury.
The more difficult question is whether the deputy was authorized, under the circumstances, to award appellee the lump sum amount of $3,500 to compensate him for his injuries. The deputy is empowered by Section 960.14(1) to convert compensation to be paid into a partial or total lump sum amount. The award, however, is limited by the provisions of Section 960.13(3), providing that any award made shall be based either on claimant's actual weekly wage, or if he cannot establish an average weekly wage, it "shall be in an amount equal to the arithmetic average between the maximum and the minimum awards listed in the applicable portions of ss. 440.15 and 440.12." The deputy appropriately determined that due to the nature of appellee's business (appellee was the owner of a business involving the design and installation of audio systems), and the incomplete documentary evidence as to his earnings, it was not possible for him to make a precise determination as to claimant's average weekly wage or his lost earnings. Yet it does not appear from his order that he complied with the alternative means of computing claimant's loss of income as required by Section 960.13(3). Accordingly, that portion of the award must be reversed and the cause remanded to the deputy in order for him to comply with the arithmetic average required by the statute. Having done so, the deputy may then, in the exercise of his discretion, impose a lump sum award. Cf. King Motor Co. v. Pollack, 409 So.2d 160 (Fla. 1st DCA 1982).
Appellant next contends that the deputy commissioner erred in directing the Bureau of Crimes Compensation to furnish to the claimant certain psychiatric treatment, *890 arguing that because Section 960.03(6) defines "victim" as "any person who suffers personal physical injury as a direct result of a crime," there was no legislative intent to compensate victims of crime for any resulting psychiatric disorders. We disagree. Section 960.08 provides that out-of-pocket loss means unreimbursed expenses or indebtedness incurred for medical care, or other services necessary as a result of the injury upon which the claim is based. We consider that a fair reading of the two statutes in pari materia authorizes a deputy to order the Bureau to pay for psychiatric treatment if such treatment is considered necessary as a result of the injury. The deputy clearly had competent and substantial evidence before him in support of such award. Dr. Hollister, a neurologist and psychiatrist, diagnosed appellant as suffering from nervous tension and memory disorders resulting from a combination of physical and psychiatric problems. His opinion was based upon his observations of appellee, as well as a history given to him by appellee. By analogy, in workers' compensation claims, an employer/carrier may be required to furnish psychiatric treatment if a claimant's psychological disorder is causally referable to a physical injury. See City of Winter Park v. Bowen, 388 So.2d 1376 (Fla. 1st DCA 1980), and Lake v. Irwin Yacht & Marine Co., 398 So.2d 902 (Fla. 1st DCA 1981).
As to appellant's contention that there is no authorization under Chapter 960 for the assessment of costs against the Bureau, appellee concedes the point, and we agree. See State, Department of Labor and Employment Security v. Cade, 400 So.2d 171 (Fla. 3d DCA 1981). Accordingly, the award granting costs is reversed.
Finally, we conclude that appellee's attorney fee could not properly be levied against the Bureau because, as of the date of the contract between appellee and his attorney, the statute authorizing such fees, Section 960.19, Florida Statutes (1979), had been repealed. Brevda, however, argues that since his injuries occurred before the effective date of the repealer, his rights to such fees had vested and could not be retroactively abrogated. In order to accept Brevda's position we would necessarily have to find the existence of a vested statutory right or contractual right at the time of injury. A fee award is of course in derogation of common law and depends for its allowance upon statute or contract. Rivera v. Deauville Hotel, Employers Service Corp., 277 So.2d 265 (Fla. 1973).
As to whether appellee had a vested statutory right to fees because his injury occurred prior to the repeal of the statute, we observe that an identical question has been raised and resolved contrary to appellee's assertion in Bureau of Crimes Compensation v. Williams, 405 So.2d 747 (Fla. 2d DCA 1981), where the court found that the claimant had no vested cause of action against the state for any recovery of fees since the right or remedy created by the statute dissolved upon repeal of the statute. The Williams court did not consider the impact, if any, that interpretations of the Workers' Compensation Act might have on the issue before it. There are obvious similarities between the Crimes Compensation Act and Chapter 440, relating to workers' compensation claims; for example, the requirement in Section 960.13(3) that any award be made pursuant to the schedule of benefits and degrees of disability set forth in Section 440.15.
On the other hand, there are obvious dissimilarities between the Workers' Compensation Law and the Crimes Compensation Act. As to the former, the acceptance of the Workers' Compensation Law by the employer, the employee, and the insurance carrier is deemed as constituting a contract between the parties that embraces the provisions of the law at the time of the injury. Sullivan v. Mayo, 121 So.2d 424, 428 (Fla. 1960). The same rule applies to a worker's right to attorney's fees under the Act. Ship Shape v. Taylor, 397 So.2d 1199, 1201-02 (Fla. 1st DCA 1981). Such a voluntary contractual relationship between the parties is absent here, and it would require us to hold that whatever right the victim possessed to fees as of the time of injury was *891 one of substance  rather than of procedure. If the right is viewed as falling within the latter category, as where it has not been reduced to judgment or otherwise executed, it falls within the repeal of the statute, absent a savings clause in the statute. See, e.g., Leland v. Andrews, 129 Fla. 429, 176 So. 418 (1937); 82 C.J.S. Statutes §§ 435, n. 1; 436 (1953); see also Jim Walter Homes, Inc. v. Gibbens, 608 S.W.2d 706, 712 (Tex. Civ.App. 1980); Jacober v. Board of Commissioners of City of Covington, 607 S.W.2d 126 (Ky.App. 1980); State Highway Commission v. Wieczorek, 248 N.W.2d 369, 372-373 (S.D. 1976).
The above principle has been observed in a number of cases from out-of-state jurisdictions within the context of statutes permitting attorney fee awards. See, e.g., Songer v. Farm Fire & Casualty Co., 91 Ill. App.3d 248, 46 Ill.Dec. 715, 414 N.E.2d 768, 772 (1980) (fee statute applied retroactively against insurer which had refused to pay a claim without reasonable cause, on the ground that there is no vested right in any remedy or procedural right); Bradfute v. Renton School District, No. 403, 19 Wash. App. 638, 577 P.2d 157 (1978) (fee statute imposed retroactively upon school board's bad faith non-renewal of employee's contract was properly applied as the statute affected no contractual or vested right but dealt with practice, procedure or remedies); Buckalew v. City of Grangeville, 100 Idaho 460, 600 P.2d 136 (1979) (fee statute retroactively applied since it was remedial in nature, not affecting substantial rights); accord, Woodland Hills v. City Council of Los Angeles, 23 Cal.3d 917, 154 Cal. Rptr. 503, 593 P.2d 200 (1979).
If, however, a right has somehow vested under a statute, repeal of the statute does not divest the holder of the right. Mitchell v. Doggett, 1 Fla. 356 (1847). A substantive, vested right is "an immediate right of present enjoyment, or a present, fixed right of future enjoyment." City of Sanford v. McClelland, 121 Fla. 253, 163 So. 513, 514-515 (1935). "[T]o be vested, a right must be more than a mere expectation based on an anticipation of the continuance of an existing law; it must have become a title, legal or equitable, to the present or future enforcement of a demand, ... ." Aetna Insurance Co. v. Richardelle, 528 S.W.2d 280, 284 (Tex.Civ.App. 1975).
The Florida view as to whether the right to fees under a statute should be considered a substantive, vested right, or an inchoate, procedural right or remedy generally follows that of other jurisdictions. As observed, the Second District Court of Appeal in Williams has implicitly held that any right to fees is inchoate and does not become vested until awarded by judgment. Additionally, the Third District has implicitly applied the same principle, holding that the award of fees to a prevailing party under Section 57.105, Florida Statutes (Supp. 1978), would not constitute a retroactive application of the statute which took effect after the institution of the action, but before the appeal was filed. Belcher v. First Nat. Bank of Miami, 405 So.2d 754 (Fla. 3d DCA 1981).
Consequently, we conclude that until judgment has been entered properly awarding fees, any right under a fee statute constitutes nothing more than an expectable interest  not a vested right. Therefore, the appellee's rights to fees, being merely remedial or procedural, cannot be deemed to vest upon the occurrence of the injury or upon filing of the action, but vests only upon a legally proper award pursuant to judgment.
Neither is appellee entitled to fees pursuant to any contractual theory. The stated intent of the Crimes Compensation Act is to provide, as a matter of moral responsibility, aid, care, and support to victims of crime. Section 960.02. As such, then, the Act may be deemed essentially as a governmental financial assistance program. Such laws are generally regarded as a type of gratuitous compensation. See Statutes Providing for Governmental Compensation for Victims of Crime, 32 A.L.R.3d 1446 (1970); 79 Am.Jur.2d Welfare Laws § 46 (1975). As gratuitous benefits, they can hardly be considered contractual in nature. In fact, it is generally held that welfare *892 benefit laws  although creating an expectation of public benefits  do not confer a contractual right to receive the expected amount. See, e.g., Richardson v. Belcher, 404 U.S. 78, 80-81, 92 S.Ct. 254, 256-257, 30 L.Ed.2d 231 (1971); Koch v. Secretary of Department of Health, Education & Welfare, 590 F.2d 260, 263 (8th Cir.1978); De Rodulfa v. United States, 461 F.2d 1240, 1256 (D.C. Cir.1972), cert. denied, 409 U.S. 949, 93 S.Ct. 270, 34 L.Ed.2d 220.
Welfare benefits are generally acknowledged as stemming from a sense of public duty or obligation. 79 Am.Jur.2d Welfare Laws § 1. This sense of public duty is recognized in § 960.02, F.S., wherein the legislature stated that the care and support of crime victims are to be undertaken by the state "as a matter of moral responsibility." These words suggest the possibility of a contract's formation based on the doctrine of moral obligation as a substitute for consideration, but there is an impediment to this theory, because the general rule is that a "mere moral obligation, without anything more, is not a sufficient consideration for an executory promise." 17 Am.Jur.2d Contracts § 130 (1964); Moral Obligation as Consideration for Contract  Modern Trend, 8 A.L.R.2d 787 § 1 (1949). Although there is authority recognizing a contractual relationship if the moral obligation arises from some prior legal liability, 17 Am.Jur.2d, Contracts at § 132, if the moral obligation is founded upon ethical motives wholly unconnected with legal liability, the general view is that such concerns do not furnish consideration for an executory contract. Id. at § 131. The case before us falls into the latter category. Accordingly, we must conclude that the legislature's declaration of "a moral responsibility" to furnish benefits to victims of crimes does not invest such victims with an enforceable right in contract once the legislature, in its wisdom, determines to withdraw some or all of such benefits.
Affirmed in part, reversed in part, and remanded for further consistent proceedings.
SHIVERS and WENTWORTH, JJ., concur.
NOTES
[1] Section 960.13(7) provides:

If the commission or commission member, as the case may be, finds that the claimant, if not granted assistance pursuant to this chapter to meet the loss of earnings, support, or out-of-pocket loss, will not suffer serious financial hardship as a result of the loss of earnings or support and the out-of-pocket loss incurred as a result of the injury, the commission or commission member shall deny the award. In determining serious financial hardship, the commission or commission member shall consider all the financial resources of the claimant. Unless a total dependency is established, members of a family are considered to be partially dependent upon a homemaker with whom they reside, without regard to actual earnings.
[2] The appellee's indebtedness, directly attributable to his injuries, can properly be characterized as out-of-pocket losses as defined under Section 960.08, meaning "unreimbursed and unreimbursable expenses or indebtedness incurred for medical care... ."