559 So.2d 595 (1989)
ST. JOSEPH HOSPITAL OF CHARLOTTE, FLORIDA, INC., Appellant,
v.
DEPARTMENT OF HEALTH AND REHABILITATIVE SERVICES, and Fawcett Memorial Hospital, Appellees.
Nos. 88-2432, 88-2878.
District Court of Appeal of Florida, First District.
December 19, 1989.
On Denial of Rehearing April 12, 1990.
*596 Judith S. Marber and James J. Breen, of Wampler, Buchanan & Breen, Miami, for appellant.
Edgar Lee Elzie, Jr., of MacFarlane, Ferguson, Allison & Kelly, Tallahassee, for appellee Health and Rehabilitative Services.
James C. Adkins, Leonard A. Carson, and John D.C. Newton, II, of Carson & Linn, Tallahassee, for appellee Fawcett Memorial.
WENTWORTH, Judge.
In this consolidated appeal, appellant, St. Joseph Hospital of Port Charlotte, Florida, Inc. (St. Joseph) seeks review of two final orders rendered by the Department of Health and Rehabilitative Services (HRS), one denying St. Joseph's petition for a formal administrative hearing on appellee Fawcett Memorial Hospital's application for a certificate of need (CON) for a cardiac catheterization laboratory, and the other order granting Fawcett Memorial Hospital (Fawcett Memorial) the CON for such a laboratory in HRS' District 8 after St. Joseph was denied intervention in the proceeding.[1] We find initially that St. Joseph does not have standing to compel comparative review of its application with that of Fawcett Memorial because of its failure to timely apply for a CON. We also find that St. Joseph waived its clear point of entry to challenge HRS' decision to grant Fawcett Memorial a CON by failing to timely assert that it had a substantial interest in the proceeding, and affirm both final orders.
The relevant events culminating in this appeal arose over two years ago. In 1987, HRS adopted rule 10-5.008(2)(a), Florida Administrative Code, which provides for publication of the fixed need pools for a particular CON batching cycle prior to the letter of intent deadline for that batching cycle. In early September 1987, the time arrived for HRS to timely publish a fixed need pool for cardiac catheterization laboratories for the September 1987 batching cycle for District 8, but HRS failed to do so. Three health care providers in that district, including Fawcett Memorial, subsequently submitted CON applications for that cycle, but St. Joseph did not. The applications submitted by these three providers were then subjected to comparative review.
Subsequent to conducting the comparative review, HRS published its State Agency Action Report (SAAR) which announced HRS' intent to deny Fawcett Memorial a CON for a cardiac catheterization laboratory and to grant Doctors Hospital of Sarasota (Doctors Hospital) a CON in the same district. Because HRS utilized an incorrect divisor in one of its calculations in the SAAR and arrived at an inaccurate statement of need, Fawcett Memorial subsequently challenged HRS' intended denial of its application. In April 1988, HRS published a Notice of Litigation in the Florida Administrative Weekly which announced Fawcett Memorial's challenge to the intended denial. This notice stated:
Resolutions of these requests for hearing by way of a grant or denial of the certificate of need at issue will determine substantial interests of person [sic]. Those persons whose substantial interests may be determined by these proceedings, including settlements, grants, and denials, are advised to govern themselves accordingly and may wish to exercise rights including intervention ... HRS will not settle or otherwise reach a final resolution of these matters for a period of 30 days from the date of the publication.
In July 1988, Fawcett Memorial, HRS, and Doctors Hospital filed a settlement agreement with the Division of Administrative Hearings which provided that Fawcett Memorial would also receive a CON for a catheterization laboratory for the September 1987 batching cycle. The parties moved to remand the cause to HRS for implementation of the terms of the settlement. At this point, St. Joseph petitioned *597 to intervene in the proceedings between these parties for the first time and was denied intervention.
St. Joseph then petitioned for a formal administrative hearing, requesting comparative review of its application for a CON with that of Fawcett Memorial, and was denied a hearing by final order of HRS. In October 1988, HRS entered its final order granting Fawcett Memorial its CON for a cardiac catheterization laboratory. There ensued the two appeals now before us, taken by St. Joseph as to the final order denying it an administrative hearing and the final order granting the CON to Fawcett after St. Joseph was denied intervention.
Section 381.709(5)(b), Florida Statutes, provides: "In administrative proceedings challenging the issuance or denial of a certificate of need, only applicants considered by the department in the same batching cycle are entitled to a comparative hearing on their applications." Generally, for a health care provider to compel comparative review of its application for a certificate of need, it must initially file its application in the same batching cycle with the applications of those providers with whom it seeks comparative review. "If an applicant fails to file in a particular batching cycle it thereby waives the right to comparative review with those health care providers that do file an application in that batching cycle." University Medical Center, Inc. v. Department of Health and Rehabilitative Services, 483 So.2d 712, 715-16 (Fla. 1st DCA 1986).
Although St. Joseph filed a letter of intent informing HRS of its intention to file an application for a CON for a catheterization laboratory to be reviewed in the September 1987 batching cycle, it ultimately failed to file any application for that cycle. St. Joseph's letter stated: "St. Joseph Hospital of Port Charlotte, Florida, Inc. would like you to consider this a Letter of Intent to file an application for a Certificate of Need for a Cardiac Catheterization Laboratory. The Hospital's application with all required information will be forwarded to you by the September 15, 1987 deadline." We conclude that this letter of intent is insufficient to establish St. Joseph as a competing applicant under section 381.709(5)(b), and thus, St. Joseph does not have a right to compel comparative review under that section.
St. Joseph argues in the alternative that HRS' failure to timely publish a fixed need pool for the September 1987 batching cycle improperly placed the burden on all interested health care providers to project the number of cardiac catheterization laboratories that would be needed based on existing rules and data. In addition, St. Joseph argues that with the erroneous calculation in the SAAR, HRS changed the projected need after the application deadline had passed and comparative review had begun. St. Joseph asserts that because it ultimately filed an application for a CON in September 1988, it is deserving of an opportunity to compete for this recalculated need under this court's analysis in Gulf Court Nursing Center v. Department of Health and Rehabilitative Services, 483 So.2d 700 (Fla. 1st DCA 1985).
HRS' failure to publish a computation of the fixed need pool before the batching cycle deadline, and its publication in the SAAR of a statement of need based on computations containing a clerical error, do not establish a violation of the rule this court enunciated in Gulf Court that competing applications which are bona fide, timely filed and directed towards the same "fixed pool of needed investments" are entitled to comparative review. Gulf Court at 705. The health council data and relevant rule methodology necessary to calculate the fixed need pool were available to all potential applicants for the September 1987 batching cycle. HRS did not alter the rule methodology applicable to the September 1987 cycle after the cycle began, and HRS' erroneous computation in April 1988 did not create additional need for that cycle. HRS' error would have been apparent to any applicant who had calculated the need and decided to apply before the batching *598 cycle deadline in September 1987.[2] St. Joseph failed to apply by the deadline for that cycle, and thus cannot claim that it was competing for the same fixed pool of need.
St. Joseph did not submit its application for a CON for a cardiac catheterization laboratory until September 1988. St. Joseph was on notice of the existence of some need in that district by the same data from the local health council that was available to other providers who did apply in September 1987. Because St. Joseph failed to apply for the September 1987 cycle, and because we find no similarity to Gulf Court, St. Joseph cannot reasonably claim an entitlement to comparative review under a Gulf Court analysis.
In addition, St. Joseph lacks standing under section 381.709(5)(b) to intervene in the process by which Fawcett Memorial was granted a CON. That section provides: "Existing health care facilities may initiate or intervene in such administrative hearing upon a showing that an established program will be substantially affected by the issuance of a certificate of need to a competing proposed facility or program within the same district... ." The hearing officer properly found that the term "program" for purposes of establishing standing for intervention did not refer to "general services to a range of patients," but rather to a "specific licensed program or a program requiring a certificate of need." The hearing officer was also correct in finding that St. Joseph's treatment of patients with general cardiac problems is not a sufficient predicate for standing as an intervenor in a cardiac catheterization CON proceeding.
Even if St. Joseph had been able to assert that its substantial interests were being affected and that it was therefore entitled to an opportunity to be heard, St. Joseph nevertheless waived its opportunity. As we noted in Gulf Coast Home Health Services of Florida v. Department of Health and Rehabilitative Services, 515 So.2d 1009 (Fla. 1st DCA 1987), the notice of litigation (which was very similar to the notice involved here) was sufficient to provide any party whose substantial interests would be affected a clear point of entry into the administrative process. St. Joseph waived this clear point of entry by not attempting to intervene for the first time until more than three months after the notice of litigation was published, and well after the parties had come to an agreement and moved to remand the case to HRS for implementation of the terms of settlement. The fact that the remand had not been accomplished before St. Joseph petitioned to intervene does not operate to negate St. Joseph's waiver. Thus, under the circumstances, St. Joseph cannot challenge HRS' grant of a CON to Fawcett Memorial. St. Joseph lost the opportunity to assert any challenge to HRS' action when it waived the clear point of entry afforded by the published notice of litigation.
The final orders rendered by HRS by which St. Joseph was denied a formal administrative hearing and Fawcett Memorial was granted a CON for a cardiac catheterization laboratory are affirmed.
ERVIN and ZEHMER, JJ., concur.

ON REHEARING DENIED
Appellant's motion for rehearing is denied, but one point addressed in the motion merits brief discussion.
Section 381.709(5)(b), which became effective October 1, 1987, includes certain provisions relating to standing which specify the conditions for availability of the statutory remedy to certain health care providers who assert an interest in the outcome of certificate of need (CON) proceedings involving other health care providers. Those provisions by their terms applied to pending proceedings except those *599 commenced prior to a certain date, which were excluded by virtue of the savings clause embodied within the statute. The opinion in the present case, involving proceedings commenced after the relevant savings clause date, was framed in the light of the amended statutory terms.
Appellant asserts that this court's language in Florida Residential Treatment Centers, Inc. v. Department of Health and Rehabilitative Services, 553 So.2d 229 (Fla. 1st DCA 1989), requires a contrary result in this case.[1a]Florida Residential stated in the situation there before the court that the "standing to intervene" of the health care provider who held an approved CON at the time section 381.709(5)(b) was passed was "not affected" by section 381.709(5)(b). Florida Residential at 229. Initially, the present case is distinguishable because appellant here, unlike the cited case, did not have an approved CON at the time section 381.709(5)(b) became effective. The ruling in Florida Residential should in any event be confined to its factual context, and because it is not clear when the proceeding in that case commenced the rationale for not applying the statute can only be inferred.[2a] Finally, section 381.709(5)(b) served only to codify the rule applied prior to the time of its enactment relating to the denial of standing to those in appellant's position. See University Medical Center, Inc. v. Department of Health and Rehabilitative Services, 483 So.2d 712 (Fla. 1st DCA 1986).
Appellant's motion for rehearing is denied.
ZEHMER, J., concurs.
ERVIN, J., specially concurs w/written opinion.
ERVIN, Judge, specially concurring.
In that I cannot agree with certain dicta contained in the majority's opinion regarding Florida Residential Treatment Centers, Inc. v. Department of Health & Rehab. Servs., 553 So.2d 229 (Fla. 1st DCA 1989) (hereinafter "FRTC"), I concur in the result only. FRTC certainly did not hold that one having a preliminarily approved certificate of need (CON), seeking to intervene in a CON contest in the capacity of an existing health care provider, thereby possesses a vested property right in a CON which would accord standing to it.
One of the cases cited in the motion for rehearing now before us is Division of Workers' Compensation, Bureau of Crimes Compensation v. Brevda, 420 So.2d 887, 891 (Fla. 1st DCA 1982), in which this court applied the rule that a statutory right to attorney's fees constitutes nothing more than an expectable interest  not a vested right  and upon repeal of the authorizing statute, unless the fee has been reduced to judgment, such right falls within the repeal  in the absence of a savings clause. In this court's later opinion in Poole v. Tallahassee Memorial Hosp., Medical Center, Inc., 520 So.2d 627, 629 (Fla. 1st DCA), review denied, 528 So.2d 1183 (Fla. 1988), we observed that the statute there under review  unlike that in Brevda  contained *600 such a savings clause,[3] hence there was no need to undertake the analysis employed in Brevda, i.e., to determine whether a statute conferring the right to fees is substantive or simply procedural. As in Poole, the statute restricting standing in FRTC is subject to a savings clause authorizing standing pursuant to the circumstances therein expressed.
I think it would be helpful to recite briefly the pertinent statutory history and facts in FRTC which were not earlier stated in our opinion in an effort to allay any uncertainty that may have resulted from what we in fact decided in FRTC.[4] Section 381.709(5)(b), Florida Statutes (1987), which limited standing in administrative proceedings to those challenging the issuance or denial of certificates of need to applicants in the same batching cycle, as well as existing health care facilities, became effective on October 1, 1987. A savings clause, however, contained in Section 381.7155(2), Florida Statutes (1987), provides that "no judicial or administrative proceeding pending on July 1, 1987, shall be abated as a result of the provisions of ss. 381.701-381.713(1), (2), (3)... ." (Emphasis added.) FRTC, the intervenor in the Manatee Palms proceeding, had applied for a CON to build its own facility in the batching cycle prior to that in which Manatee Palms had applied and it possessed a preliminarily approved CON as of March 10, 1987, which is the date of the state agency action report that recommended issuance of the CON to FRTC. Manatee Palms then commenced its own proceeding[5] when it filed its application for a CON in April 1987.[6]
Thus, because a proceeding had been commenced before the effective date of section 381.709(5)(b), FRTC's standing to intervene in the Manatee Palm's proceeding was controlled by the terms of Section 381.494(8)(e), Florida Statutes (1985), which allowed "substantially affected person[s]" aggrieved by the issuance or denial of a CON to seek administrative relief.[7] That statute has been interpreted as authorizing holders of preliminarily approved CONs to have standing to intervene in CON application proceedings for facilities offering similar services. See St. Francis Parkside Lodge of Tampa Bay v. Department of Health & Rehab. Servs., 486 So.2d 32 (Fla. 1st DCA 1986) (corporation with a pending application for a CON to construct a facility had standing to petition for formal hearing).
The simple result of our opinion in FRTC was that because a proceeding had been commenced once Manatee Palms filed its CON application with HRS in April 1987, and because FRTC had a preliminarily approved CON, it therefore possessed standing to intervene under the terms of the savings clause provided in section 381.7155(2). Consequently, any discussion of the issue of whether FRTC's right to intervene in the CON application sought by Manatee was substantive or procedural is, under the circumstances of that case, unnecessary. In the case at bar, the proceeding was commenced after July 1, 1987, the *601 date specified in the savings clause set out under section 381.7155(2). Therefore, the dicta contained in the majority's opinion is similarly inapplicable to the facts at bar.
NOTES
[1] St. Joseph has filed a similar appeal of a final order issued by HRS in a batching cycle subsequent to the cycle involved here. That appeal is currently pending in this court as St. Joseph Hospital of Port Charlotte, Florida Inc. v. Department of Health & Rehabilitative Services and Adventist Health Systems/Sunbelt, Case No. 89-2390.
[2] Although not dispositive of the issues involved here, we note that subsequent to the events involved in the case at bar HRS articulated its new policy on how it will treat changes or corrections to a fixed need pool that has already been published and errors in a published fixed need pool which are discovered after the cycle has begun. See Health Quest Corp. v. HRS, 11 F.A.L.R. 5427, 5430-33.
[1a] See also Lee Memorial Hospital v. Department of Health & Rehabilitative Services, 15 FLW D338, 1990 WL 7640 (Fla. 1st DCA February 6, 1990); Charter Hospital of Pasco Co. v. Department of Health & Rehabilitative Services, 15 FLW D305 (Fla. 1st DCA January 31, 1990). Both cases are now pending on rehearing.
[2a] The amendatory provisions of the statute on standing plainly relate to remedies. See generally, Sutherland, Stat. Const., sec. 22.36 (4th Ed.). We are referred to no authorities which would classify standing as a vested substantive right (cf. Sutherland, sec. 23.34) and the historical perspective provides no such support. General Development Co. v. Kirk, 251 So.2d 284, 286, note 7 (Fla. 2d DCA 1971). For application of other procedural/remedial changes see Alterman Transport Lines, Inc. v. State, 405 So.2d 456, 459 (Fla. 1st DCA 1981); Rothermel v. Florida Parole & Probation Commission, 441 So.2d 663 (Fla. 1st DCA 1983). Amendment of statutory penalties for usury in existing contracts was approved because it "did not work any modification of fundamental substantive rights," and statutory "action predicated on remedies ... creates no vested substantive right." Walker & LaBerge, Inc. v. Halligan, 344 So.2d 239, 242, 243 (Fla. 1977), citing Tel Service Co. v. General Capital Corp., 227 So.2d 667 (Fla. 1969).
[3] The savings clause specifically stated that the repealer did not apply to actions filed on or before the effective date of the act. Poole, 520 So.2d at 628-29.
[4] This court of course is permitted to take judicial notice of its records in its own cases. See Department of Legal Affairs v. District Court of Appeal, 434 So.2d 310 (Fla. 1983).
[5] The term "proceeding" has been given a liberal interpretation in the administrative realm. It is not defined in Chapter 120, Florida Statutes. As stated in Daniels v. Florida Parole & Probation Comm'n, 401 So.2d 1351, 1354 (Fla. 1st DCA 1981), superseded by statute on other grounds, Griffith v. Florida Parole & Probation Comm'n, 485 So.2d 818 (Fla. 1986), the term "`proceeding' does not limit or restrict the word to proceedings that are cognizable under the APA[,]" but encompasses as well "a legal action, a particular action at law, or case in litigation."
[6] See generally Section 381.709, Florida Statutes (1987), for an explanation of the entire procedure that must be followed in certificate of need cases, and see specifically section 381.709(3)(b), permitting substantially affected persons to request public hearings regarding CON applications.
[7] Because FRTC's application was not finally approved until February 1988, after the effective date of section 381.709(5)(b), it therefore had not yet completed construction and could not be considered to be an existing health care provider for standing purposes under the new statute.